GLOVER *vs.* SHIELDS.

Where the premises intended to be conveyed by a deed were not described therein by metes and bounds, nor by monuments, and there was nothing in the deed itself by which the land could be located and its lines ascertained, but the grant was of nine lots in the city of Brooklyn, known and designated, on a map of 151 lots of ground, &c. made by J. L., surveyor, dated 18th September, 1833, and filed in the office of the clerk of the county of Kings as Nos. 140, &c.: *Held* that the map thus referred to became a material and essential part of the conveyance, and was to have the same force and effect as if it had been incorporated into the deed.

And the lots conveyed being, by the map, bounded, on the west, by a public turnpike ; it was *further held* that the effect of the deed was to convey the lands up to the turnpike road as that existed and was located at the date of the deed. That the true boundary was to be ascertained, not by inquiring where the east line of the turnpike road was on the 18th of September, 1833, when the map was filed, but on the 17th of July, 1851, when the deed was given. And that if the line of the turnpike had been changed, between those dates, the grantor should, in the deed, have qualified the force of the description on the map, by an intimation of the change.

APPEAL from a judgment entered at a special term, after a trial at the circuit, by the court without a jury.

*D. T. Walden,* for the plaintiff.

*E. H. Kimball,* for the defendant.

*By the Court,* BROWN, J.    This action is brought to recover the possession of two small pieces of land in the city of Brooklyn.    It was tried at the Kings circuit, in November, 1859, before Mr. Justice EMOTT, without a jury, who rendered judgment for the defendant.    In respect to the piece of land secondly described in the complaint, the defendant made

Glover *v.* Shields.

no claim of his title, and the proof as to possession being contradictory, the court found that fact in favor of the defendant, and thus concludes all future inquiry in regard thereto. The real question arises upon the plaintiff's title to the piece of land first described in the complaint.

Joseph Evans is the original source of title. In 1833, being the owner in fee of lands lying on both sides—east and west—of the Flatbush turnpike, he caused a map(*a*) to be

(*a*) Map of premises.

made of 151 lots of ground lying on the east side of the turn-pike road, by Jeremiah Lott, surveyor, dated September 18, 1833, which map he filed for future reference, in the office of the clerk of the county of Kings. These lots were designated by numbers, from one up to 151 inclusive, and a part of them adjoined upon the turnpike road. The general direction of the road is southerly, and runs in a curve or part of a circle where it passes lots Nos. 147, 146 and 128, owned by the defendant, and 124, 120, 116 and 112, owned by other persons. After Evans had laid out the property in this way, and filed the map, he had a sale thereof, which I take to have been a public sale, but how much he sold and what part he retained does not appear. After this time, and before May 1st, 1854, he altered the turnpike road along and west of the lots to which I have last referred, contracting it on the east and enlarging it on the west, and removed a part of the curve and made it more direct. But how much the road was drawn in upon the east and pushed to the west does not appear. I assume, however, from an inspection of the map, that the alteration did not extend to the middle of the turnpike road. This made a small gore of land between the old and new lines of the road where it passed west of the lots now owned by the defendant, and is the land the possession of which the plaintiff claims to recover in this action. No change, however, was made in the fences which enclosed the defendant's lots, until long after he had acquired his title; and the map made by Jeremiah Lott, the surveyor, and filed in the clerk's office, remained and yet remains as it was when made.

On the 1st of May, 1834, Joseph Evans and Catherine Ann his wife, by their deed of that date, conveyed 17 of these lots, including lots 147, 144 and 128, now owned by the defendant, to the plaintiff, Ralph Glover. They are described in the deed as being in the city of Brooklyn, and known and distinguished on a map of 151 lots of ground on Mount Prospect, Brooklyn city, Long Island, made by Jeremiah Lott, surveyor, dated 18 September, 1833, and filed in the office of the clerk of the

Glover *v.* Shields.

county of Kings, as numbers 119, and so on, giving the numbers of the lots, 17 in all. And " also a piece or parcel of land not laid down on said map formed by a line, beginning at the northwesterly angular corner of lot number 147 of said map, thence running southerly in a direct line to the northwesterly corner of lot number 108 of said map, including the land between said direct line as far as opposite the south line of 120 of said map, and the westerly lines of lots 147, 146, 128, 124 and 120, be the dimensions more or less. Said lots and pieces of land are bounded as follows, viz : on the north by North street on said map; on the east by West street; on the south by lots 115 and 116; and west by the aforesaid direct line which borders on the Flatbush turnpike, including the land forming said streets adjoining and in front of said lots to the middle of the streets, subject to the use of the land in front of said lots by all the owners of lots fronting thereon, and by the public generally, as public streets, according to the map hereinbefore referred to." This deed was made evidence by the plaintiff. He also produced and proved a mortgage executed by himself and wife to Maria Evans, dated October 11, 1834, upon the same lands, and with the same identical description. Also the record of proceedings in the late court of chancery to foreclose the mortgage, with the decree and report of sale and master's deed to Maria Evans, dated December 8th, 1841. This deed also contains the same description of the premises. He next produced in evidence a deed from Maria Evans to Ralph Glover in fee, dated March 29th, 1849, duly acknowledged and recorded, for the same premises and with the same description as that contained in the mortgage and master's deed before referred to. There was also read in evidence upon the trial, a deed in fee simple from Ralph Glover and Amelia his wife to Mary Berger, dated July 17th, 1851, for nine of these same lots, by the following description : " All those certain nine lots, pieces or parcels of ground, situate, lying and being

on Mount Prospect, in the 9th ward of the city of Brooklyn, and known and designated on a certain map of 151 lots of ground on Mount Prospect, Brooklyn, L. I., made by Jeremiah Lott, surveyor, and dated September 18, 1833, and duly filed in the Kings county clerk's office, as and by numbers 140, 141, 142, 143, 144, 145, 147 and 128, including the land adjoining said lots to the center of North street as laid down on said map, subject to be opened as a public street whenever the owners of a majority of the lots fronting thereon shall decide." The defendant, it appeared, was in possession of lots described in this deed, under a regular title derived from Mary Berger. He was also in possession of the premises in dispute, and claimed title thereto under the deed to Mary Berger. Flatbush turnpike, during the time of these several conveyances, was and still is an open traveled road. North street was subject to be opened at the will of the owners of a majority of the lots fronting thereon, and was at the time of the trial an open highway.

One of the objects of the plaintiff in producing the two deeds to himself, and the mortgage and the master's deed to Maria Evans, was to show that the gore of land supposed to have been carved out of the property by the alteration of the turnpike road was a separate and distinct piece of land, because in these several conveyances it is described as a separate piece of land. The force of this fact upon the question of title, however, is much impaired by the consideration that the conveyance of both pieces—if there were separate pieces—was in these several conveyances to the same person. That the title has always vested in the same person, and that they have not been separately enclosed or separately occupied. The motive for a separate and additional description of the gore may have been greater certainty, and a more perfect assurance that the one passed with the other. I attach very little importance to the manner in which the premises are described in these deeds, because the defendant's title is to be

Glover *v.* Shields.

determined upon the force and effect of the deed from the plaintiff to Mary Berger, and the concurrent circumstances under which it was executed.    The premises are not described by metes and bounds, nor by monuments placed upon the ground and referred to in the deed.    There is nothing in the deed itself by which the lots can be located and their lines ascertained.    Looking at the deed alone, it is impossible to say what lands or premises were intended to be conveyed, or the form and dimensions of the lots therein enumerated.    The map made by Jeremiah Lott in 1833, and filed in the clerk's office, is the instrument which defines what the grantor sold and the grantee purchased.    The grant is of the nine lots of ground known and designated on this map as numbers 140, &c.    The map thus becomes a material and essential part of the conveyance, and is to have the same force and effect as if it was incorporated into the deed.    The question is not as to the effect and extent of a grant running to a road, or along a road, or bounded by a road or a public highway by any other words, as in the cases to which we have been referred, of *Sizer* v. *Devereux*, (16 *Barb.* 160,) and *Smiles* v. *Hastings*, (24 *id.* 44.)    In the present case the real question is whether the western boundary of the defendant's lot reaches the Flatbush road at all; for the plaintiff's claim is to recover the land which he thinks and alleges lies between the western line of the lots granted to Mary Berger, by the deed of the 17th July, 1851, and the direct line running from the north-westerly angular corner of lot No. 147 to the nortwesterly corner of lot No. 108, which borders on the Flatbush turnpike, and mentioned in the deed from Joseph Evans and wife to the plaintiff, of the date of May 1st, 1834.    The defendant insists there is no such premises; that the effect of the deed to Mary Berger is to convey the lands up to the Flatbush turnpike road as that existed and was located on the 17th of July, 1851, the date of the deed.    The true boundary is to be ascertained, not by inquiring where the east line of the turn-

pike road was on the 18th September, 1833, when the map was filed, but on the 17th July, 1851, when the deed was given. How can it be otherwise ? The deed contained no intimation where the boundary was, but referred to the map for that purpose, which thus became a part of the deed. The map bounded the lots upon the westerly side by the Flatbush turnpike road, and thus the grantor adopted the line of the road as it then was located as the true boundary. This deed, if there is any uncertainty in the description, is to be taken most strongly against the grantor, and construed most favorably for the grantee. The purchaser doubtless looked at the map in the clerk's office to learn where the lots were, the quantity of land they contained, together with their location as to roads and streets, with a view to access and profitable occupation, and there saw that they were bounded in part by the turnpike road. But this is not all. The plaintiff and Mary Berger both say in their testimony, that during the negotiation for the purchase of the property, he exhibited to her for her information a copy of the map made by Jeremiah Lott in 1833, and that by the map so exhibited the lots purchased by her were bounded on the turnpike road. She also says he pointed out to her a willow tree on lot No. 147, and the corner of the turnpike road, as the boundary of the lots at the time of the purchase. It cannot be worth while, I think, to inquire whether these acts and representations of the plaintiffs do not conclude him from asserting any other boundary line, as an estoppel *in pais;* for if I do not misapprehend their effect they show that he has no manner of title. If he had designed to limit his grantee to a boundary short of the line of the road, it was an easy thing for him to have put the limitation in the deed, or qualified the force of the description on the map, by an intimation that the turnpike road had been altered. But having conveyed by the map, without limitation or qualification, and that paper giving the road as the western boundary of the lots, he has parted

with the title up to that line as effectually as if he had given the road as the boundary by express words written in the deed.

[ORANGE GENERAL TERM, September 10, 1860. *Lott, Emott* and *Brown,* Justices.]