TRUSTEES OF THE FIRST EVANGELICAL CHURCH *et al.*

*v.*

MICHAEL WALSH *et al.*

| 57 | 363 |
| 128 | 63 |
| 57 | 363 |
| 141 | 105 |
| 57 | 363 |
| 166 | 171 |
| 57 | 363 |
| 184 | 210 |
| 184 | 215 |

1. JURISDICTION IN CHANCERY—*invasion of burial places.* Where certain town authorities, without right, invaded grounds purchased and appropriated by a church organization for the purposes of a cemetery, with the view to open a highway through the same : *Held,* such act of invasion was not merely a trespass for which there was such adequate remedy at law as to exclude the jurisdiction of a court of chancery, but that court had jurisdiction by injunction to restrain the commission of the wrong, and to quiet the parties entitled in the possession and use of their cemetery.

2. DEDICATION—*effect of a plat.* Where a tract of land of such character as not to be regarded as *urban* property, was laid out into lots of ten acres each, by the owner, who so platted the ground as to indicate that a certain strip was designed for use as a highway, but the plat was not in conformity with the statute, it was *held,* a dedication would not result from

the mere making and recording of such a plat, but it would amount to nothing more than evidence tending to show a dedication, as at common law.

3. SAME—*estoppel in pais* And while the doctrine of estoppel *in pais* is not to be regarded as foreign to the principle upon which dedication rests, yet, where it did not appear that any of the lots had been sold with reference to the plat, which was of no statutory force of itself, or any improvements made with a view thereto, or any acceptance of the supposed highway by the public, there could be no estoppel to preclude the owner from denying there was a dedication.

4. When a dedication is relied upon to establish the right, the acts of both the donor and the public authorities should be unequivocal and satisfactory, of the design to dedicate, on the one part, and to accept and appropriate to public use, on the other.

APPEAL from the Superior Court of Chicago ; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Mr. J. V. LE MOYNE, for the appellants.

Messrs. GOUDY & CHANDLER, for the appellees.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court :

This was a bill for an injunction to restrain appellees, officers of the town of Lake View, in Cook county, from interfering with appellants' possession and use of certain cemetery grounds therein situate.

On the 20th of April, A. D. 1860, appellants obtained, by purchase and deed, of and from one Humphreys, a conveyance to them, in fee, of the north half of the north half of the east half of the northwest quarter of section 20, town 40, north range 14, east of third principal meridian, excepting six acres on the southeast corner of the piece, previously sold, making fourteen acres conveyed.   Appellants took possession, and

soon after the conveyance inclosed the ground and devoted it to the uses of a cemetery, and have ever since continued such use of it.  Afterwards, and on the 9th of October, A. D. 1865, they also purchased and obtained the conveyance of one Gilbert Hubbard, and wife, of a parcel of land constituting ten acres, and described in the deed as "All of block No. 4, of Laflin, Smith & Dyer's sub-division of the northeast quarter of section 20, town 40, north range 14, east of third principal meridian, with the appurtenances, &c."

The plat of Laflin, Smith & Dyer's sub-division of the northeast quarter of section 20, was introduced in evidence. It purports to have been acknowledged by the proprietors on the 24th, and recorded on the 27th of November, 1855; but it was not, nor is it claimed to have been, made in conformity with the statute as to the mode of laying out towns and making additions thereto.  No statutory effect can, therefore, be accorded to the plat.

It appears by the evidence, that block 4 lies directly east of the first mentioned parcel purchased of Humphreys, and if a certain strip along the west line of block 4, designated on the plat as Gifford street, and forty feet wide, can not be regarded as a highway, then it adjoins the other parcel on the east.

Assuming they did join, appellants, soon after their purchase of the block, united both pieces into one by inclosing them with a suitable fence, and dedicated the whole ground to public use as a graveyard.  Grounds thus devoted were regarded by the civil law as "sacred, religious and holy," and belong to no individual.  Cooper's Justinian 69.  And the civil law in this particular, is said by Bracton to be the common law, and it would be strange indeed that a system, based upon so accurate a theory of human nature as the common law is, should fail to recognize a sentiment so deeply seated in the human heart, and so universal in the human race, whether civilized or savage.

366          Trustees *et al. v.* Walsh *et al.*          [Sept. T.,

Opinion of the Court.

It appears that appellees, as commissioners and overseer of highways of the town, claiming the strip in question to be a public highway, Walsh, as overseer, and accompanied by a police officer, by the direction of the commissioners, just before the filing of this bill, proceeded, in the assertion of such claim, to take down, by force, the fence across the strip, both on the north and south sides of the inclosure, to effect an entrance into and through the grounds, while at the same time the solemn rites of burial were about to be performed within, and were thereby delayed for over an hour, and the clergyman officiating was threatened with arrest if any resistance was made ; and now, without any disclaimer of the right asserted, appellees insist, that even if the right were ill-founded, the act was but a simple trespass, for which there is an adequate remedy at law, and chancery has no jurisdiction.

It has been decided by the Supreme Court of the United States, in a similar case, that there is no adequate remedy at law for such an invasion, and that chancery has jurisdiction. The right asserted in that case, went to the whole grounds ; here, it is to a part only, but that does not affect the question. It is upon the principle that burying places, laid out and consecrated to such use, become public immunities, or common privileges, and if the right asserted would, when carried into effect, disturb the enjoyment of those immunities or privileges, and the right itself be ill-founded, then, as such disturbance would be more than a private trespass—would be a public nuisance going to the irreparable injury of the congregations complaining—chancery has jurisdiction to restrain its commission, and to quiet the appellants in the possession and use of their cemetery. *Beatty et al.* v. *Kurtz et al.* 2 Peters R. 566, 584 ; *Smith* v. *Bangs et al.* 15 Ill. 399.

What, we may ask, would be the measure of damages at law, for the wounded sensibilities of the living, in having the graves of kindred and loved ones blotted out and desecrated by common highway travel? The inadequacy of a remedy at law, is too apparent to admit of argument.

The only remaining question in the case is, whether the right asserted by appellees was well or ill-founded; or, in other words, whether the strip in question was, or was not, a public highway by dedication; for no other mode of its becoming so is pretended.

The dedication is sought to be established by the plat given in evidence; the act of cutting down some trees upon the strip by one commissioner, by direction of another, claimed to be an acceptance, and certain vague evidence of user by the public. First, then, as to the plat: We have already seen, this plat was not in conformity with the statute, and is to have no statutory effect given to it. Did it operate as a dedication, or is it only evidence tending to show it?

Angell, in his work on Highways, sec. 149, says: "It may be stated as a general rule, that when the owner of *urban* property, who has laid it off into lots, with streets, avenues and alleys intersecting the same, sells his lots with reference to a plat in which the same is so laid off, or where, there being a city map in which this land is so laid off, he adopts such map, by sales, with reference thereto, his acts will amount to a dedication of the designated streets, avenues and alleys, to the public."

This rule, we may say, is fully established by the American authorities, but this case does not fall within it. There is nothing to show that the land included in the sub-division was urban property. A sub-division into ten-acre blocks may be consistent with the idea of urban property, but does not, of itself, prove the property to be of that character. If it had been, the fact could have been easily shown; but it does appear that the Humphreys property was used as a farm.

There is not a word of proof in the case, that any of the property embraced in the plat introduced in evidence, has ever been sold by Laflin, Smith & Dyer, or either of them, or by any grantees of theirs, with reference, in terms, to this plat. It does not appear that Hubbard, appellants' grantor, derived his title from Laflin, Smith & Dyer, or either of them.

The basis of the rule from Angell, is the doctrine of estoppel either by deed or *in pais.* When a vendor, who has so platted his land, makes reference to such plat in his deed, or reference to the plat of a city made by commissioners, the plat becomes a part of the deed. As was said in *Wyman* v. *Mayor, etc.,* 11 Wend. 486, where the owner sold city lots with reference to a map on which the streets were laid down, "he adopts the map, and thereby makes an appropriation or dedication, to public use, of the ground laid out as streets." So in *Livingston* v. *Mayor, etc.,* 8 Wend. 85; *Trustees of Watertown* v. *Cowan,* 4 Paige, 510. Hence, also, it was said by Bronson J., in matter of *Thirty-second street,* 19 Wend. 130, that in such cases "it was a matter of no importance whether the street, so designated by reference to the city map, had ever been opened, or used as such or not."

But in Hubbard's deed to appellants, there is no reference in terms to the plat introduced in evidence, as in the cases referred to. In the cases of *Noonan* v. *Lee,* 2 Black (U. S.) 499, *Thomas et al.* v. *Hatch,* 3 Sumner, 170, and *Glover* v. *Shields,* 32 Barb. 374, there was an express reference in the deed to the plat, plan or survey.

It may be that parol evidence, not inconsistent with the written instrument, would be admissible to apply such instrument to its subject, as was held in *Noonan* v. *Lee, supra.* But as none was attempted to be given, it is unnecessary to express any opinion as to its admissibility or effect.

There is also a total absence of evidence in this case, tending to show that the plan introduced in evidence had ever been regarded in respect to improvements, or that any such had ever been made upon or near the land, or that other lots have ever been sold with reference to the plat.

The doctrine of estoppel *in pais* is frequently applied in this country, although Mr. Angell thinks it is foreign to the principle on which dedication rests, and forms an excrescence to mar the simplicity of the doctrine as established by English authority. Nevertheless, it was applied in the leading case of

*City of Cincinnati* v. *White's Lessees*, 6 Peters, 438. The court say: "The right of the public to the use of the common in Cincinnati, must rest upon the same principle as the right to use the streets; and no one will contend that the original owners, after having laid out streets and sold building lots thereon, and improvements made, could claim the easement thus dedicated to the public;" * * "and after being thus set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel *in pais,* which precludes the original owner from revoking such dedication. It is a violation of good faith to the public, and to those who have acquired private property with a view to the enjoyment of the use thus publicly granted."

It would seem that the doctrine of estoppel is, after all, not foreign to the principle upon which dedication rests. The making of the map, or plan, and selling building lots thereon, and keeping silent while improvements are made, are the clearest evidence of an intention on the part of the owner to donate the land thus designated, to public use, and purchasing the lots sold in this manner, and making the improvements, or, if it be a street, working and repairing it by the public authorities, or a user by the public a sufficient time, constitute evidence of acceptance of the proffered donation, which, if unequivocal, makes the dedication complete; and the reasons that underlie an estoppel *in pais* are cogent against allowing the owner to revoke the dedication.

In *Godfrey* v. *The City of Alton*, 12 Ill. 33, dedication was adjudged upon a survey and plan, which were adhered to in selling lots and making improvements, and the doctrine of estoppel *in pais* was not expressly referred to. But in *Child* v. *Chappell*, 5 Seld. R. 256, Denio J. says: "In the case of an express dedication, it is not necessary that it should be followed by any length of user. *Hunter* v. *The Trustees of Sandy Hill*, 6 Hill, 413, 414. It operates immediately in the nature of an estoppel, upon the principle that to retract the

promise implied by such conduct, and upon which the purchaser acted, would disappoint his just expectations." In that case, the question was one of private right between individuals.

This case is not one of express dedication, nor does it contain any element of estoppel within any of the authorities. The plat was not in conformity with the statute, so that making and recording it would amount to nothing more than evidence tending to show a dedication, as at common law. Ang. on Highways, sec. 149, p. 161–2, and cases referred to in note.

Secondly, was there an acceptance by the public authorities? Dyer, one of the proprietors who made the plat, was put upon the stand by appellees and interrogated as to their intentions in reference to this strip. He testified it was 33 feet wide, and they expected the owner of adjoining land would join in making it a street; that they intended to leave 33 feet, or leave a chance for a street, if anybody would join. This intention is apparent from the plat itself. The other streets designated upon it are marked 80 feet wide, while this is only 40. But nobody would join. He was the principal man in making the plat, lived near by, and was familiar with all that was done. He testifies he never knew any work to be done on this strip by the public authorities, or that it was used by the public as a highway. The evidence is overwhelming, that down to the time appellants inclosed this block with their other ground, and cleared and appropriated it to cemetery purposes, this strip was covered with wild crab-apple brush, small and large oaks, and, for years before appellants purchased, there was a fence across the strip, a short distance south of the south line of the block; that it was never worked or repaired as a highway by the town authorities, and never used by the public, except occasionally by picking a way through.

The deposition of one Jacob Wolfe, was taken in May, 1868, and he testifies, that about seven years before that time, he cut down some trees on this strip; that, at the time, he was commissioner of highways; that he did it by the direction of

Dr. Dyer, who was also a commissioner. This is relied upon as evidence of an acceptance by the public. But what detracts from the force of the evidence, is, that Dyer was one of the owners of the property at this time, and it is therefore doubtful whether the direction was given as owner, or merely in the character of a town officer. It was not done in a way to give it either the appearance or force of an official act. Besides, Dyer testifies that he never knew any work to be done upon it as a highway, and Wolfe says he took what he cut, home, for firewood.

The act, if it could in any point of view amount to an acceptance, is altogether too equivocal to have any such effect given to it.

In *Grube* v. *Nichols,* 36 Ill. 96, this court said : " When a dedication is relied upon to establish the right, the acts of both the donor and of the public authorities should be unequivocal and satisfactory, of the design to dedicate, on the one part, and to accept and appropriate to public use, on the other."

Upon a very careful examination of the evidence, we are satisfied that all the material allegations of the bill are sustained. The decree of the court below dismissing the bill, must therefore be reversed and the cause remanded.

*Decree reversed.*