By the Court.—Arnoux, J.
This action was tried April 19, 1881, at a trial term, and resulted in a verdict for the plaintiff for $9,019, whereupon the court directed that defendants’ exceptions be heard in the first instance at the general term, and that judgment in the meantime be suspended on said verdict.
Defendant’s testator executed a full covenant warranty deed conveying certain lots on the southerly side of Seventy-sixth street, between Eighth and Ninth avenues, in the city of New York, and this action is brought by the plaintiff for breach of the covenant of seizin in said deed. The breach complained of affected the ownership of a strip of land, half of a road thirty-three feet wide, running from the Bloomingdale road to the commons, which encroaches upon the front.of the easterly portion of said lots.
Before 1801, Bichard Somarindycke owned a farm or tract of land of one hundred and six acres, extending from the Hudson river to the commons, and from Seventy-fourth to Seventy-eighth streets, through which he laid out the road in question. In June, 1801, he with his wife conveyed to Thomas Cadle a tract of land *243 containing eight acres, bounded as follows: “Beginning in the Bloomingdale road at the southerly corner of a road two rods wide, leading to the commons, thence running southerly along the Bloomingdale road to land belonging to the Widow Magee; thence easterly along Mrs. Magee’s land; thence north 34° 30' east 7 chains and 30 links ; thence along the road aforesaid of two rods wide,” .... to the place of beginning. In 1807, Mrs. Somarindycke, as executrix of her husband, conveyed to said Cadle a tract of ten acres, including the premises in question, lying to the east of the eight-acre plot, under the following description: “ Beginning at twelve feet from the eást corner of land now belonging to Thomas Cadle, at a road thirty-three feet wide ; thence along the said road 30 chains and 24 links to ... . the commons; thence along said last-mentioned land 3 chains and 28 links; thence along the said Elizabeth Somarindycke’s line 30 chains and 74 links, to a lane twelve feet wide ; thence along the said lane 3 chains and 28 links to the place of beginning, containing ten acres of land, agreeable to a map or chart made by Samuel S. Stilwell, city surveyor, annexed to these presents.” The map shows the eight-acre plot as extending back from the Bloomingdale road south of the road thirty-three feet wide and west of the lane twelve feet wide, and taking the entire breadth of the land owned by Somarindycke south of the road. The ten-acre plot is a parallelogram 3 chains wide and 30 chains long, south of the road' thirty-three feet wide, east of the lane twelve feet wide and having to the south of it another tract of land of about the same shape, and dimensions, the sole access to which was through the twelve-feet lane, by way of the thirty-three-feet road. The land lying to the north of said road is also marked T. Cadle on said map.
The last-mentioned deed contains immediately after the description the following grant: “The said Eliza *244 beth Somarindycke doth hereby grant the use and privilege of the road two rods wide leading from the Bloomingdale road to the commons, to the said Thomas Cadle, his heirs and assigns foreverand after the general clause, “ together with all and singular,” etc., comes the following: “And also all the estate, right, title and interest .... and also with free liberty for the said Thomas Cadle, his heirs and assigns, and his and their servants, with horses, carts and other cattle and carriages, to use at all times forever hereafter the said road two rods wide leading from the Bloomingdale road to the commons, and the easement, privilege and benefit of the same as the same is laid down in the said map annexed to these presents.”
Among the additional facts established by the evidence herein are the following : That the tract first conveyed contains, exclusive of said two-rod road, eight acres of land; that the tract secondly conveyed, exclusive of said road and the twelve-feet lane, contains ten acres of land; and that the land to the north side of said road contains the amount conveyed, exclusive of the road.
There can be no question of the soundness of • the legal proposition contended for by the counsel for the appellant: that every grant is to be construed as running to the center of the road adjoining, unless there are words of exclusion. The law abhors the infinitesimal interests and perplexing complications that would result from the opposite construction, whereby land would be unconveyed which is in itself valueless to the grantor and injurious to the grantee. There is nothing peculiar or mysterious in a street or a stream as a boundary. It is the same with a stake or a tree. Where the lines run to either of these, or to any other fixed point, it takes to the center. The law makes such boundary lines contiguous or coterminous. If we were limited to the description of this deed alone, applying *245 the said rule, we must decide that this conveyance included the road to the center thereof.
But in this description there are no monuments which can determine the northerly and southerly lines of said description, and no authority can be found which under such circumstances holds that the three chains running from the center of the road can be extended so as to be three chains plus one half the road. We have not, therefore, a case coming absolutely within the principle above referred to. But even if we had, that rule is not an inflexible rule, and it is controlled by another rule—the rule of intent, which has been designated the pole-star of construction, it is more than the pole-star. The doctrine that the intent must govern is like the law of gravitation. It pervades the entire domain of land, as that does the material universe. The star is often observed ; the law is ever operative. And whatever conclusion may be drawn from the description itself, the intent of the parties must govern ; for every instrument, however solemn or however ordinary, must be controlled by that principle. As was eloquently said by the supreme court of the United States in the legal tender cases (12 Wall. 457): “This is a universal rule of construction, applicable alike to statutes, wills, contracts and constitutions. If the general purpose of the instrument is ascertained, the language of the provisions must be construed with reference to that purpose and so as to subserve it.”
To ascertain the intent of the parties there are in this case three lines of legal inquiry. First, the instrument itself; second, other instruments executed by the parties; and, third, the acts of the parties themselves. Without adopting the order proposed, we will first examine the deed of the eight-acre plot. There the starting-point excluded the road, and by no principle of construction could the last boundary along the road be held to remove the starting-point to the center. *246 The only case we have been able to find that seems to have a contrary determination is the case of Lunt v. Holland (14 Mass. 149), to which we shall hereafter refer. In this State we find an authority directly in point. In Babcock v. Utter (1 Abb. App. Dec. 21, 40), the premises in question were bounded: “Beginning at a stake and stones on the west bank of the Unadilla river,” thence going by courses and distances around the tract “to the Unadilla river.” The court says: “The words ‘to the Unadilla river,’ according to the usual interpretation of such an expression in conveyances, would carry the line to the center of the river, as the general rule is that where a line touches the river it goes to the center; but the words are entirely consistent with an interpretation which should stop the line at the margin or bank of the river; and whether the one or the other interpretation should be given to them must depend upon the aparent intention of the parties, to be determined by other portions of the deed. The other portions of the deed which have reference to the river,' I think, show a clear intent to limit the operation of the grant to the bank of the river. The starting-point is unequivocally from ‘the bank,’ and not from the center of the river ; and if the last line in the description is confined to the center of the river it cannot run ‘ to the place of beginning,’ as the description requires.”
So in the case at bar, the starting-point being at the southerly side of the road, the return line could not run to the place of beginning, as the description requires. , Another test would be to reverse the order of the description : “Beginning at the southerly side of the road and runing thence easterly along the road,” would of necessity either exclude the road or incorporate into the description something that was not within the intent of the parties to the deed. This view as to the eight-acre plot is further confirmed by the cases of Smith -y. Slocum (9 *247 Gray, 36) and Sibley v. Holden (10 Pick. 249). Excluding, therefore, the road in that grant, we come now to a consideration of the deed in question. Its starting point is twelve feet from the east corner of the preceding grant, at a road, etc. It is clear that this gives the grantee no right in the lane twelve feet wide; and as twelve feet from the east corner of the former grant, at the road, would only reach across the lane on the southerly side of the road, we must conclude that the intent of the parties was that the road should be excluded.
And when we come to consider the further provisions of the deed, it then is certain that Mrs. Somarindycke intended to reserve, and with the grantor’s consent did reserve to herself the fee of said road. If she had by the description already granted the fee to her grantee, it would have been absurd for her to have given him permission to use the road in the manner she did ; and surely, if the grantee understood that he had obtained the fee of said road, he would not have accepted a deed which contained provisions that would throw so much doubt upon his title. Besides this, the construction contended for by defendants’ counsel violates the ordinary legal rule. Mrs. Somarindycke reserved to herself no right of way over a road which was her only access to the Bloomingdale road on the west or the road through the commons on the east, and yet, owning the land, we are asked to hold by construction that she shut herself out of all ingress to and egress from her own premises.
Another fact showing the intent of the parties is the reference to the map annexed to the deed. In Hunt v. Holland (supra) the deed bounded the property, “ beginning at a hemlock tree standing by the south side of the river Androscoggin, then south, etc., to another hemlock tree also standing by said river.” The action was brought in ejectment, and the locus in quo was an island containing about thirty acres, lying between said *248 two trees, the river running on each side of it. But preceding the description the conveyance specified “a certain tract of land, etc., which was surveyed and laid out, etc., by Samuel Titcomb and upon the trial the plan was produced, wherein it appeared the island was included. Id is a familiar principle of construction that ■ where a will, deed or other instrument refers in proper terms to a map or other paper it becomes a part of the instrument (French v. Carhart, 1 N. Y. 96 ; Jackson v. Ransom, 18 Johns. 107; Studwell v. Terrett, 4 Bos. 520; Glover v. Shields, 32 Barb. 374; Cox v. James, 59 Barb. 144). The map annexed to the deed in question was as effectual as the plan referred to in the case cited ; that, to include, and this to exclude, the premises claimed. For the plats on the map exclude Thomas Cadle from any ownership in the road or lane. It makes the same exclusion from the twelve-foot lane that it does from the two-rod road, and the same exclusion in front of the ten-acre tract that it does in front of the eight-acre tract.
The acts of the ^parties are in harmony with this construction. The grantee took possession of ten acres of land, which was all that was conveyed to him, and for which he had paid. For this he paid at the rate of $250 per acre. The strip claimed considerably exceeds half an acre; The acts of both parties, therefore, in reference to the premises, prove an intent to exclude the strip of land in question. We, therefore, on the grounds above stated, agree with the learned judge who tried this cause, that the land conveyed to Thomas Cadle did not extend to the center of the road, but only to the southerly side thereof; and hence the description of that deed cannot be held to extend the fee granted thereby to the center of the road. We are therefore of the opinion that the exceptions should be overruled and judgment directed for the plaintiff upon the verdict, with interest and costs.
Russell, J., concurred.