Landon, J.
—This action was brought to recover the possession of seventeen and one-half cords of wood of the value of eighty dollars, which had been cut by the plaintiff’s intestate upon a certain wood lot of which he was in possession and claimed to be the owner under a paper title.
The defendant admitted the taking of the wood, and alleged that he owned the land upon which it was cut. The burden thus rested upon him to make good the title upon which he based his defense.
The trial court, upon the close of the testimony, directed a verdict for the plaintiff, and thus, in substance, held that the defendant had failed to establish his defense.
The parties had adjoining farms. Both farms belonged to Jonathan Stever in his lifetime and at his death. He was the common source of title. While owning both farms,- Stever, in 1863, gave a mortgage upon the more northerly farm, which was called the “homestead” farm.
The defendant obtained title to this farm July 14, 1877, by referee’s deed given upon judgment of foreclosure and sale under this mortgage. The boundary between the two farms was thus described in the mortgage and in the referee’s deed: “ Southerly by lands * * "* of the party of the first part formerly belonging to Christopher and *786 Myron Shults.” Myron Shults had conveyed the southerly or “ Shults ” farm to Jonathan Stever in March, 1861. Stever’s executors conveyed it to the plaintiff’s intestate in' October, 1877. Christopher Shults conveyed this farm to Myron Shults in 1858, and John Martin conveyed it to Christopher Shults in 1847. The trial court held that since both parties held under Jonathan Stever, the boundary in dispute between the two farms was determined by ascertaining the boundary of the Shults farm as conveyed by Myron Shults to Stever. The evidence located this boundary and showed that the wood was cut upon the plaintiff’s and not upon the defendant’s farm.
But the defendant offered evidence tending to show that when Jonathan Stever bought the Shults farm he was, and. since 1854, had been in possession of the locus in quo, claiming to own it as part of the homestead farm. This evidence was, upon plaintiff’s objection, excluded, and, we think, properly.
Christopher Shults owned the premises as early as 1847, and Stever’s mortgage of the homestead defined it as-bounded southerly by lands “formerly belonging to Christopher and Myron Shults.” If Jonathan Stever ha,d by adverse possession against Christopher and Myron Shults acquired title to the locus in quo, that fact would not control the force of Stever’s description in the mortgage of the-homestead.
Owning both the homestead and Shults farms, if he chose to describe in the mortgage of the homestead its southern-boundary by the lands formerly owned by Christopher and Myron Shults, or by any other line wholly on his own land, it was competent for him to do so, though the fact may have been that when he bought of Myron Shults his adverse-possession of the locus in quo had been so long continued as to ripen into a title. There was no offer to show that neither Christopher nor Myron Shults ever had title-to the Shults farm.
Besides, if Jonathan Stever had by adverse possession-acquired title to the locus in quo, such title was not a paper title; it rested upon evidence, and the necessary evidence may have been unobtainable. Be this as it may. Jonathan Stever bought the Shults farm of Myron Shults, and took from him and had recorded a full covenant deed. This deed described the farm as the same conveyed to Myron Shults by Christopher in 1858, by deed recorded. in the Columbia county clerk’s office, in deed book No. 8, etc When the defendant obtained title to the homestead farm under the mortgage, he obtained title to the land mortgaged, and no more. He could not claim that the homestead actually embraced any of the land “formerly belong *787 ing to Christopher and Myron Shults,” because the mortgage excluded such claim. He could not claim that the land excluded from the mortgage had not formerly belonged to them, or either of them, for Jonathan Stever by the act of purchasing the land from Myron admitted that Myron owned it, and the deed he took from Myron recited that Christopher had formerly owned it.
This view of the case disposes of all the exceptions taken by the defendant to the exclusion of evidence tending to show that Jonathan Stever, when he bought the Shults farm, actually owned the wood lot in question.
Exception was taken by the defendant to the admission of the evidence of the description of the Shults farm by courses and distances.
It appeared by the record of deeds read in evidence that in 1829 Elisha Williams conveyed the Shults farm to Frank Punderson, who in 1837, conveyed it to John Martin, who in 1847, conveyed it to Christopher Shults.
By successive reference in the deeds forming the chain of title, the deed to Jonathan Stever conveys by the same description contained, or referred to, in the deed from Elisha Williams.
The record of the deed from Elisha Williams was read in evidence by the plaintiff. This deed gives a general description of the Shults farm and then proceeds—“formerly belonging to John Tallmadge, now in the occupation of James Tallmadge, containing 202 acres one-quarter and 22 rods, according to the survey thereof made by Eoger Kennedy on the 10th day of June, 1828, a copy whereof is herewith delivered.” The record of this deed is of date October 6, 1829, in book 0 of the records of deeds in the Columbia county clerk’s office. The record is properly certified by an entry upon the book immediately following the deed itself. Next following this certificate of record is an entry upon the record, entitled “The survey of James Tallmadge’s farm,” arid then follows the description, composed of fifty-eight courses and distances, ending with the words, “containing 202 acres, 1 rood and 22 perches of land.” Then the entry proceeds: “The survey of the aforesaid farm in the town of Claverack was made by Eoger Kennedy, the 10th day of June, 1828. The survey bill of which the above is a copy is attached to the deed from Elisha Williams and Lucia, his wife, to Frank Punderson, recorded immediately preceding this survey.” This entry is not certified by any signature. This alleged record of the survey bill was objected to by the defendant upon various grounds and the objection overruled. The defendant excepted.
*788 It was probably admissible upon the authority of Putnam v. Stewart (97 N. Y., 411). But assuming it was inadmissible as a record, we may assume from the recital in the deed that the grantor did deliver to the grantee with the deed the survey bill therein referred to.
Although a copy of the original, it became for the purposes of the deed an original between grantor and grantee, and between them it was part of the deed itself. Glover v. Shields (32 Barb., 374). We may presume that the grantee procured it is be entered of record. When therefore, this grantee became a grantor and by his deed referred to the record by book and page, and added that by reference thereto it “would more fully and at large appear,” we may assume that he intended to refer to all that was therein entered touching the Shults farm.
That reference was continued in effect down to the deed to Jonathan Stever. We know, therefore, that this is the description the parties adopted, and hence it was properly given in evidence.
The testimony of the surveyor, called upon the part of the plaintiff, was to the effect that he went upon the ground, found the line specified in the survey bill above mentioned, and found that the locus in quo was upon the plaintiff’s side of the line. The testimony on the part of the defense did not tend to establish the location of the line given by this survey, but tended to show that the fines of the survey would not close. If the fine between the two farms was so described as to be found upon the ground, and the plaintiff’s surveyor testified that he found it, and testified to its location, such testimony was not answered by testimony showing that the fines of the entire survey would not close. The trial judge was right in holding that the material facts were not in dispute.
The defendant alleges. error in the exclusion of certain deeds and mortgages under which Elisha Williams may have acquired title to the Shults farm.
It was immaterial whether Elisha Williams, in 1829, could show good title to the locus in quo or not. His title proved good enough to give his grantees quiet enjoyment, and to induce Jonathan Stever to buy the Shults farm; also to bound the homestead farm by the fine between the two farms, which the survey bill delivered with the Williams deed called for.
Since defendant failed because the homestead farm which he bought did not embrace this wood lot, it would not have aided his recovery if he had shown that the plaintiff’s deed did not embrace it. The plaintiff made a prima facie case, which the defendant assumed the burden of overthrowing by showing a better title than the plaintiff had.
*789 Proof that both paper titles were alike bad, would not have advanced the defendant’s case.
The judgment should be affirmed, with costs.
Learned, P. J., and Williams, J., concur.