EAST OMAHA LAND Co. *v.* JEFFRIES.

(*Circuit Court, D. Nebraska.* March 1, 1889.)

1. BOUNDARIES—ACCRETIONS—CONVEYANCE.

Rev. St. U. S. § 2396, provides that "the boundaries and contents of the several sections, half sections, and quarter sections of the public lands shall be ascertained" as follows: "All the corners marked in the surveys returned by the surveyor general shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate; and the corners of half and quarter sections not marked in the surveys shall be placed, as nearly as possible, equidistant

from those two corners which stand on the same line. ⁕ Boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners * * * to the water-course," etc. *Held*, that in surveying a lot bordering on a river the water-course becomes the boundary, and continues so, no matter how much it shifts by accretion, and conveyances of the lot pass all, including such accretion, to that line.

2. SAME.

The facts that rapid changes in the banks of the Missouri river are constantly going on, and that 40 acres have been added to adjoining land, do not overthrow an averment of a bill to quiet title to such addition, on the ground of accretion, that it was by an imperceptible increase, where it was nearly 20 years in forming.

In Equity.   On demurrer to bill to quiet title.
*James M. Woolworth* and *Chas. J. Greene*, for plaintiff.
*Finley Burke*, for defendant.

BREWER, J.   This is a bill, filed by the complainant, to quiet its title to a tract of about 20 acres, which lies in what was at one time the bed of the Missouri river.   Complainant claims that the premises in question were formed by accretions against land, title to which he derives through several mesne conveyances from the person who originally entered the same, and that by accretion the new land became a part of that which was bought of the government.   The facts alleged are that in 1851 the United States, in surveying township 75 north, range 44 west, in Iowa, found section 21 to be fractional, and subdivided it so as to produce lot 4, containing 37.44 acres.   Field-notes and plats were duly made, returned, and approved in the general land-office.   They show the meander line of lot 4, its course and distances; the north boundary of the lot being the Missouri river, along whose banks this meander line was run.   In 1853, one Edward Jeffries entered this lot, and in 1855 a patent was issued to him.   The complainant claims title by mesne conveyances from Jeffries, the last deed (the deed to complainant) being dated March 26, 1888.   The meander line was the same, or nearly the same, when Jeffries entered the land as when the survey was made, but about the time of the entry land began to be formed along the bank by natural causes and imperceptible degrees; that is, by the current and the waters of the river washing and depositing against and along the north line of said lot earth, sand, and other material, so that by 1870 a tract of 40 acres and more had been formed by accretion.   In 1877 the river suddenly cut through its banks, on a point more than a mile south of its original bed, and changed its course so as to leave high and dry all the region through which it had flowed from 1855 to 1877.

The case is before the court upon demurrer to the bill, and the question is whether this body of land, formed by this gradual and imperceptible addition, belonged to the owner of lot 4, and passed by the several conveyances of lot 4 to complainant.   Counsel for defendant challenge the application of the doctrine of accretion to the changes caused by the Missouri river.   I shall not consider that question, but assume that the doctrine of accretion applies here as well as elsewhere.   He also criti-

cises the language of the bill, which alleges that when the land was entered the left bank was *nearly* where it was in 1851, when the survey was made. I pass that by, also, and assume for the purposes of this case that the doctrince of accretion applies, and that Edward Jeffries, when he entered the land, took all the land to the Missouri river. Complainant insists that the meander line is not the line of boundary; and that this is so is settled by the case of *Railway Co.* v. *Schurmeir*, 7 Wall. 272. I quote the language of the court:

"Express decision of the supreme court of the state was that the river, in this case, and not the meander line, is the west boundary of the lot, and in that conclusion of the state court we entirely concur. Meander lines are run, in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser. In preparing the official plat from the field-notes, the meander line is represented as the border line of the stream, and shows to a demonstration that the water-course, and not the meander line, as actually run on the land, is the boundary."

In that case the meander line ignored a tract of 2.78 acres, which in time of high water was an island, but in time of low water connected with the main-land; and it was held by the supreme court that the patent from the government of the fractional lot adjoining took this tract as a part, although outside of the limits of the meander line.

But the question in this case lies deeper that this. It is not what belongs by the law of accretion to the owner of lot 4, but what passes by a deed of lot 4; and it is insisted by counsel for defendant that the patent took only to the river line, as it stood when the survey was made, and that every subsequent deed describing the property only as "Lot 4" conveyed no more. In other words, he insists that land which is formed by accretion does not pass by a conveyance describing the lands to which the accretion has been made; and in this proposition I think he is correct. In the case of *Granger* v. *Swart*, 1 Woolw. 88, Mr. Justice MILLER, of this circuit, charging the jury, held that a patent for a fractional lot carried the ground to the river bank, as it was at the time the survey was made, but that, if between the time of the survey and the time of the entry a body of land had been formed by accretion, it remained the property of the government, and did not pass by the entry and patent. The same doctrine seems to have been recognized by the supreme court of this state in *Lammers* v. *Nissen*, 4 Neb. 245; *Bissell* v. *Fletcher*, 28 N. W. Rep. 303. But for this court the question seems to be put at rest by the decision of the supreme court of the United States in the case of *Jones* v. *Johnston*, 18 How. 150, which involved a question as to lands in the city of Chicago bordering on the lake. I quote this from the opinion:

"Now, one answer to this assumption is that a grantee can acquire by his deed only the lands described in it by metes and bounds, and with sufficient certainty to enable a person of reasonable skill to locate it, and cannot acquire lands outside of the description, by way of appurtenance or accession. Lord Coke says: 'A thing corporeall cannot properly be appendant to a thing cor-

poreall, nor a thing incorporeall to a thing incorporeall.' Co. Litt. 121*b*. And this court, in *Harris* v. *Elliott*, 10 Pet. 54, after approving of the maxim of Coke, observed that ' according to this rule land cannot be appurtenant to land.' In the case of *Jackson* v. *Hathaway*, 15 Johns. 454, the court say ' a mere easement may without express words pass, as an incident to the principal object of the grant; but it would be absurd to allow the fee of one piece of land, not mentioned in the deed, to pass as appurtenant to another distinct parcel, which is expressly granted, by precise and definite boundaries.' See, also, *Leonard* v. *White*, 7 Mass. 6."

And again:

"Any alluvial accretions since the deed belong to the plaintiff, as owner of the adjoining land. Any past accretions belonged to the then owner; and whoever sets up a title to them must show a deed of the same, as in the case of any other description of land. The case of *Lamb* v. *Rickets*, 11 Ohio, 311, exemplifies the principle for which we are contending. The defendant had agreed to convey a piece of land, called the ' Hamlin Lot,' containing forty-two acres, more or less, and also two other small lots, of ten acres, with a proviso, if the Hamlin lot and the two others contained more than fifty-two acres, the excess was reserved. The defendant conveyed the Hamlin lot, and refused to convey the other two. A bill was filed to compel a conveyance. The Hamlin lot was bounded by one of its lines on the bank of the Tuscarawas river, and has been originally conveyed to the defendant, and by him to the plaintiff, as containing forty-two acres, more or less. The defense set up to the bill was that before the defendant conveyed the lot to the plaintiff large accessions had been made from the river to the lot, and that these alluvial formations made up the quantity of fifty-two acres. The plaintiff claimed that the quantity should be determined according to the old boundary of the lot upon the bank of the river, which would be but some forty-two acres. But the court held that the question was not as the bank of the river was twenty-five or thirty years ago, but as it was when the Hamlin tract was conveyed to the plaintiff, and estimated the quantity of land conveyed accordingly."

As I read this opinion of the supreme court, it asserts this doctrine: that, while alluvial accretions belong to the owner of the adjoining land, they do not pass by the conveyance of that land. In other words, if the owner of lot 4, in the case at bar, became through accretions the owner of 40 acres adjacent, his conveyance of lot 4 carried the lot as it stood, and not the 40 acres of which he had become the owner by the matter of accretions. If he intended to convey this additional tract, by apt language he should describe it. His conveyance is limited to that which he described, although it may be true that the boundaries of lot 4 are not the meander line as run by the surveyors, but the bank of the river as it stood when the surveys were made. If he wished to convey that which had formed since, and which had become his through accretions, he should by apt words describe this added land which he proposed to convey. Not having conveyed these accretions, they remain his. The complainant's title is limited to lot 4. That lot was bounded by the river line at the time of the survey and the entry. The lands outside of that it has never purchased. That is the land in controversy. To it the complainant has no title, and the demurrer must be sustained.

BREWER, J. This case was submitted to me last winter on demurrer to the bill. On examination of the questions, it seemed to me that the demurrer was well taken, and I accordingly prepared an opinion sustaining it. An application for a rehearing was filed, and the case is before me now on such application. For the facts of the case, I refer to the former opinion.

The first question is whether the doctrine of accretion applies. In my former opinion, I assumed that it did; but that assumption is strongly challenged by counsel for defendant. While the allegation in the bill is of an imperceptible increase, one of the characteristics and tests of accretions, yet counsel urge that I am bound to take judicial notice of the character of the Missouri river, and the soil through which it flows, and of the rapid changes in the banks which are constantly going on, and also that the extent of the total increase, as disclosed by the bill, is so great as to forbid the idea of that necessary imperceptible increase. I cannot assent to this. While it is true the increase is great, many acres having been added, yet the time during which this increase was made was nearly 20 years, and, obviously, during that time an increase might be going on, imperceptible from day to day and from week to week, which during the lapse of these many years would result in the addition of all the land, as alleged. Hence, notwithstanding what is known of the character of the river, and the soil through which it flows, no conclusions flowing therefrom can overthrow the plain averments of the bill.

Passing now to the question which I ruled in favor of the defendant, I am constrained to believe that I erred therein. It was held that a deed to lot 4 conveyed lot 4 only, as it existed at the time of the survey, and that all accretions remained the property of the prior owner, unless expressly named in the deed. The ruling was based principally upon the case of *Jones* v. *Johnston*, 18 How. 150, and singularly it is that case which, after reargument and re-examination, leads me to change my opinion. Section 2396 of the Revised Statutes provides how the boundaries and contents of the several sections, half sections, and quarter sections of the public lands may be ascertained:

"Sec. 2396. The boundaries and contents of the several sections, half sections, and quarter sections of the public lands shall be ascertained in conformity with the following principles: *First.* All the corners marked in the surveys returned by the surveyor general shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate; and the corners of half and quarter sections not marked on the surveys shall be placed as nearly as possible equidistant from those two corners which stand on the same line. *Second.* The boundary lines actually run and marked in the surveys returned by the surveyor general shall be established as the proper boundary lines of the sections or subdivisions for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which have not been actually run and marked shall be ascertained by running straight

lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the water-course, Indian boundary line, or other external boundary of such fractional township. *Third.* Each section or subdivision of section, the contents whereof have been returned by the surveyor general, shall be held and considered as containing the exact quantity expressed in such return; and the half sections and quarter sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or the one-fourth part, respectively, of the returned contents of the section of which they may make a part."

Obviously, then, in surveying land bordering upon a river the opposite corners of the quarter sections are fixed, and the side lines are extended from these corners, parallel with each other, until they meet the water-course; and that water-course, and not any line that is run along it, becomes the boundary. This was settled by the case of *Railway Co.* v. *Schurmeir*, 7 Wall. 272. Now in the case in 18 How., *supra*, the court held that land outside of fixed lines, boundaries of a tract, could not be appurtenant to it, quoting Lord Coke to the effect that a thing corporeal cannot properly be appurtenant to a thing corporeal. The lots in that case, as shown by the plat, were bounded on the north by North Water street, and were included within lines dropped from fixed corners on that street, at right angles with the same, and extended until they intersected the lake shore. Now, it was with reference to accretions formed at these side lines that the court used the language referred to. The said lines, being definite and fixed, run at right angles to North Water street, were and continued to be the boundaries of the lots named, no matter what accretions formed outside those lines. And in further illustration of this was the language used which I quoted in the former opinion. But, while this was laid down as the rule for accretions formed outside of the fixed side lines, a different rule was stated in reference to land formed by accretions at the end of the lot, where the water-front was the boundary. It affirmed that where the water-line was the boundary it remained the boundary, no matter where that line might be. Thus this language is used:

"Now, in order to determine what land was conveyed to the plaintiff by his deed of 22d October, 1885, all that was necessary was to locate the lot upon the ground in conformity to the description at that date. The calls in the deed, having reference to the plat, furnished the necessary *data* for the location. There was the fixed line north, on the ground; the lake, a natural object, south; and the lot inclosed between two lines extending at right angles from the corners on Water street to the lake. If the call for the southern boundary, instead of being a lake, which is a shifting line, had been a permanent object, such as a street or wall, there could not be two opinions as to the location. And yet the water-line, though it may gradually and imperceptibly change, is just as fixed a boundary, in the eye of the law, as the former. I speak not now of sudden and considerable changes, which are governed by different principles."

And again:

"But the true answer to the position assumed, and which governed the trial below, is that the water boundary on the lake is to be deemed the true southern boundary of the lot at the date of the conveyance; as much so as North Water street was its northern boundary. And the plaintiff is carried by his deed to it, not because of the alluvial deposit, if any, between the water-line at the time of the survey and plat and the line at the date of the deed having passed as appurtenant to the lot, but because one of the calls given in the deed requires that the side lines should be thus extended."

In other words, the supreme court seems to have laid down this proposition, that where a water-line is the boundary of a named lot that line remains the boundary, no matter how it shifts, and a deed describing the lot by number or name conveys the land up to that shifting line, exactly as it does up to the fixed side line. Supporting this doctrine are the cases of *Lamb* v. *Rickets*, 11 Ohio, 311; *Giraud's Lessee* v. *Hughes*, 1 Gill & J. 249; *Kraut* v. *Crawford*, 18 Iowa, 549; *Glover* v. *Shields*, 32 Barb. 374. And, independent of authority, any other rule would be attended with great, if not insurmountable, practical difficulties. Supposing a chain of title to this very lot, (lot 4) in which, during a succession of years, there appears every two or three weeks a conveyance. The boundary on the river is gradually extending, but extending so slowly that during the time of possession of any grantor the increase would be imperceptible. How, then, can the portion thus reserved be distinguished from the portion conveyed? It is true that between the time of possession of the patentee and the last grantee the change becomes evident; but is there any reason why all this increase should belong to the patentee, and not be distributed among the various holders in the chain of title? And how can it be distributed? This practical difficulty in the application of the rule announced in the former opinion has led to a careful re-examination of the question in the light of the authorities, and especially of the case in 18 How., and I am compelled to hold that there was error in the former opinion. The true rule is that, so long as the doctrine of accretion applies, the water-line, if named as the boundary, continues the boundary, no matter how much it may shift, and the deed of the lot carries all to such line. The petition for a rehearing must be sustained, and the demurrer to the bill will be overruled.