# THE CITY OF CHICAGO

*v.*

## ANTHONY J. DREXEL.

*Filed at Springfield March 26, 1892.*

1. STREETS—*plat, under the act of 1845—failure to designate streets.* Under the provisions of the Revised Statutes of 1845 a plat of the subdivision of land into blocks and lots, not made out, certified and acknowledged substantially as therein provided, does not operate as a dedication or conveyance of the fee in the streets. The failure to mark upon the plat the names of the places claimed to have been intended for streets, or even to call them streets, is fatal to the operation of the plat as a statutory dedication of the fee in such strips to the public.

2. DEDICATION—*essentials, at common law.* To prove a common law dedication of land for a street, both an intention on the part of the owner of the land to make it, and an acceptance of such dedication by the proper public authorities, must be shown, and the proofs as to these facts must be clear and unequivocal.

3. SAME—*plat as evidence of an offer and intention to dedicate.* Where the owner of land subdivides it, and makes, acknowledges and records a plat of the subdivision, designating thereon certain strips of land as streets or highways, such plat, though not made in accordance with the statutory requirements, will be evidence of an intention, as well as of an offer, to dedicate to the public a right of way over the strips thus designated, as at common law.

4. But when such plat fails to designate any strips of land as public streets, and all that appears on it are certain blocks of certain dimensions and numbers, part of which are subdivided into lots consecutively numbered, with certain strips of land of certain designated widths lying between the blocks, and nothing appears, apart from their former location and dimensions, to show the purpose for which such strips are laid out, while this may be considered some evidence of an intention to dedicate such strips to the public, its force, when considered alone, will be greatly weakened as evidence.

5. There is no rule of law which forbids the subdivision of land by the owner in such way as to establish over it only private ways, for the sole benefit of those who may become owners of lots in the subdivision, and in which the public, as such, will have no interest, and over which it will have no control. In such case, the rights of the lot owners to such easement in and over the ground laid off on the plat as ways, will have no tendency to establish the title of the public to such ways as public streets.

6. SAME—*evidence of acceptance.* The evidence of an acceptance of a common law dedication, by the proper authorities, must be clear and satisfactory. An acceptance of a part of the streets mapped out on a plat is not an acceptance of the whole, the rule being, the authorities may accept them as a whole, or in part, only.

7. SAME—*right to revoke offer—acceptance after revocation.* The authorities seem to be clear, that since to render a dedication complete and effectual it must be accepted by the public authorities, it is before acceptance a mere offer, which the owner of the land may revoke at any time. But his conveyance of the land so offered for a street or highway, before acceptance, is a revocation of the offer to dedicate, and any acceptance thereafter will be unavailing.

8. EJECTMENT—*judgment against plaintiff—conclusive as to him and those claiming under him.* A judgment in an action of ejectment against the plaintiff, who claimed title in fee, is conclusive, not only upon the parties to the suit, but also upon those claiming through or under the plaintiff, as against one acquiring title through one of the defendants.

9. PRACTICE—*stipulation—how far conclusive—how avoided.* A stipulation by a party as to the facts of a case, so long as it stands, is conclusive on him, and can not be contradicted by evidence tending to show the facts otherwise. If a stipulation is entered into unadvisedly or through misinformation, the party injured should seek to have it set aside by some direct proceeding.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

This was a suit in chancery, commenced April 13, 1891, by Anthony J. Drexel against the city of Chicago, for the purpose of quieting the complainant's title to a strip of land bordering on Lake Michigan, and lying between the margin of said lake and the easterly line of block 12, in Hundley's subdivision of lots 3 to 21 and 33 to 37, inclusive, in Pine Grove, being a part of fractional section 21, township 40, north, of range 14, in the town of Lake View, Cook county. It appears that in February, 1853, Elisha E. Hundley, who jointly with certain other parties, was the owner of the whole of said fractional section, subdivided the entire fractional section and platted the same under the name of Pine Grove, the following being a copy of said plat:

Statement of the case.

October 24, 1855, Hundley, the owner of lots 3 to 21 and 33 to 37, in said subdivision, re-subdivided the same, and made, acknowledged and recorded a plat thereof, as follows:

The bill alleges, in substance, that the complainant is the owner and in possession of said block 12, and of said strip of land lying between said block and the lake; that at the time Hundley's subdivision of lots 3 to 21 and 33 to 37 was recorded, the land embraced in said subdivision was not within the limits of any municipal corporation, but that by an act of the General Assembly, approved February 17, 1857, certain territory, including said land, was established as a town, by the name of the town of Lake View, and by an act approved February 15, 1865, said town was, under the same name, organized as a municipal corporation; that on the 5th day of April, 1887, the town of Lake View was organized, under the general act of 1872, as a city, under the name of the city of Lake View, and that on the 29th day of June, 1889, the city of Lake View was annexed to the city of Chicago, and is now a part of that city.

The bill further alleges that the city of Chicago claims and insists that Hundley, by making, acknowledging and recording the plat of said subdivision, or in some other way, dedicated the strip of land lying between said blocks 12, 7 and 6 and the lake as a public street or highway, and that such dedication was at some time accepted by the proper corporate authorities of the town of Lake View, the city of Lake View or the city of Chicago, but the complainant denies such claim in every particular, and denies that said strip of land or any part of it is or ever was a public street or highway, or was ever dedicated to such purpose by Hundley or any other person, or that it was ever accepted by the authorities of either of said municipal corporations; that said strip of land has never been managed, controlled, graded, ditched, drained, worked or improved in any way as a public street or highway by any of said corporate authorities, and has never been used by the public as a public street or highway, and the public have never acquired any easement upon or over it; that owing to the action of the waters of the lake, said strip of land has,

o

at different times, been of different widths at the same points, the waters of the lake having at some times so far encroached upon it as to endanger and even to wash away portions of said block 12, and that the owner of said block, in order to prevent it from being washed away, has been compelled to and has driven piles and constructed piers east of said block and in the strip of land in question, and had he not done so, said block 12, as well as the strip of land between said block and the lake, would have been washed away; that said strip of land is and always has been in its natural state, and is a rough, uneven, broken and sandy shore, marked by numerous depressions and elevations consisting of heaps of sand, and has always been and is wholly unfit for travel, and large portions of it have been enclosed by fences for more than thirty years.

It is further alleged that, in the year 1884, the town of Lake View brought an action of ejectment, in the Superior Court of Cook county, against Parker R. Mason, Peter Kohlsaat, Henry Kohlsaat and Oliver Ditson, to recover possession of the strip of land lying between said lots 6, 7 and 12 and the lake; that said town filed its declaration in said suit, July 30, 1884, and that said defendants filed thereto pleas of not guilty and no other pleas; that afterwards, at the May term, 1885, of said court, a trial of said suit was had before a jury, and that at such trial, the jury rendered its verdict finding the defendants therein not guilty, and that at the June term, 1885, of said court, a motion by said town for a new trial having been overruled, said court rendered final judgment on said verdict in favor of said defendants and against said plaintiff, and that said judgment is now in full force; that Oliver Ditson, one of the defendants in said suit in whose favor said judgment was rendered, was and is a grantor in the complainant's chain of title to the strip of land east of said block 12; that by reason of said judgment, the city of Chicago, as the successor of the town and city of Lake View, is barred and estopped from setting up or insisting that said

strip of land is a public highway. It is further alleged that the city of Chicago, claiming said strip of land between said block 12 and the lake as a public highway, threatens to remove the fences which the complainant has erected enclosing the same, and to forcibly take possession of said strip of land.

The bill prays that said strip of land be declared free from any public use, easement or servitude, and not to be a public street or highway, and that the city of Chicago, its officers, servants, etc., be perpetually enjoined from claiming the same as a public street or highway, and from interfering in any way with the complainant in the possession or enjoyment thereof, and also a general prayer for relief.

The city of Chicago answered claiming and insisting that all the land lying between said blocks 6, 7 and 12 and Lake Michigan is a public street or highway of said city, and that said Hundley's subdivision of said lots 3 to 21 and 33 to 37, inclusive, and the acknowledgment of said plat, operated as a dedication of the strip of land above mentioned as a public street or highway, and that such dedication had been accepted by the town of Lake View or the city of Lake View, or by its successor, the city of Chicago; that at the time said subdivision was made, said Hundley was the owner of the lots so subdivided.

The answer admits the substantial accuracy of the plat of Hundley's subdivision appended to the bill, and of which a copy is given above, and also admits that none of the streets, highways or public grounds laid out on said plat were designated thereon by any specific names, but alleges that said Hundley intended by said plat to designate as streets or public grounds and to dedicate to public uses, as public streets, the several streets shown on said plat extending in a north-westerly and south-easterly direction, and that all of said streets are sufficiently noted and indicated as such by their position in relation to the lots laid out and numbered as building lots in said plat, and that the same became streets by virtue of such

dedication, and have ever since been used as streets, and have since received names as streets.

That Hundley, from the time said plat was made and recorded to the time of his death, a period of twenty years, always declared and represented said strip of land in its entire length and breadth to be a public highway, and from the time of recording said plat, wholly abandoned all claim of ownership therein, and that he also acknowledged said strip of land to be a public highway by selling lots in said blocks 6, 7 and 12 fronting on the same to sundry purchasers; that shortly after recording said plat, Hundley built fences on the easterly lines of said blocks 6, 7 and 12, thereby indicating that said lines were the easterly boundary of said blocks; that not only was the dedication of the streets, highways and public grounds on said plat accepted by the public authorities, but the streets so laid out were from time to time improved as the public necessities required or the resources of the municipal authorities made it possible; that the east and west streets indicated on said plat have since been designated by certain names, and have been used and travelled to their easterly termination at said lake, and that the use of said strip of land on the lake shore always has been and is now necessary to the complete use and enjoyment of said other streets, and that the acceptance by said public authorities of said east and west streets operated as a constructive acceptance by them of the strip of land in question as a street, and that said strip of land has never been abandoned by said authorities.

The answer admits the institution and prosecution of the ejectment suit alleged in the bill, and the proceedings and judgment therein as alleged, except that it avers that Ditson, one of the defendants to said suit, was not served with process, and did not appear therein, either in person or by attorney, and that said court therefore had no jurisdiction over his person; that in said suit, the plaintiff, in its declaration, claimed title to said strip of land in fee, and on the trial, the

plaintiff's counsel having declared that he expected to prove only a common law dedication of said strip of land, the court held that such dedication did not convey to said plaintiff the fee, and thereupon instructed the jury to find the defendants not guilty; that for these reasons, said judgment in ejectment did not determine the rights and interests of the town of Lake View, or of its successor, the city of Chicago, to the use of said strip of land as a public street, and that such rights were not determined or adjudicated in said suit, especially as against said Ditson.

At the hearing, which was had on pleadings and proofs, a decree was rendered finding and holding that said plat of Hundley's subdivision was not made in conformity to the statute in that behalf, and did not operate as a conveyance to the public or to any municipal corporation of the strip of land in question, and that Hundley never dedicated or intended to dedicate the same for a public highway, or to any public use, and that said strip of land has never been managed, worked or improved as a public highway by any municipal authorities, and that said municipal authorities have never formally accepted said supposed dedication of said strip of land, except that the city council of the city of Lake View, on the 9th day of November, 1888, passed a resolution purporting to accept such supposed dedication, but that in the year 1871, and long prior to the passage of said resolution, said Hundley had conveyed all his title and interest in said strip of land to Nixon, a remote grantor of the complainant; that the public have never in any way acquired a right to use said strip of land as a public highway. The city of Chicago was therefore perpetually enjoined from interfering with said strip of land, and from taking possession of or in any way interfering with it as a public highway.

From this decree the city of Chicago has appealed to this court. Further facts will be found sufficiently stated in the opinion of the court.

Mr. JOHN S. MILLER, and Mr. HERVEY H. ANDERSON, for the appellant:

A plat of the subdivision of land, made out according to the statute in force at the time, operates as a conveyance in fee of the land intended for streets. Gross' Stat. 1871, chap. 25, sec. 39.

A substantial compliance with the statute is sufficient. 2 Dillon on Corp. (3d ed.) 625; 4 Gilm. 489; 41 Ill. 152; 39 id. 93; 88 id. 593.

A common law dedication may be shown by the acts and declarations of the owner. *Rees* v. *Chicago*, 38 Ill. 336; *Littler* v. *Lincoln*, 106 id. 353.

The plat was evidence tending to prove a common law dedication. *Gould* v. *Howe*, 131 Ill. 496; *Railroad Co.* v. *Hartley*, 67 id. 439; *Maywood Co.* v. *Maywood*, 118 id. 61.

The owner must do some act, or suffer some act to be done, from which can be fairly inferred an intention to dedicate. *Kyle* v. *Logan*, 87 Ill. 64; *Chicago* v. *Stinson*, 124 id. 510.

No particular form or ceremony is necessary to dedicate land. *Cincinnati* v. *White's Lessors*, 6 Pet. 431.

Further as to a common law dedication, see *Rees* v. *Chicago*, 38 Ill. 336; *Hiner* v. *Jeanpert*, 65 id. 430; *Winnetka* v. *Prouty*, 107 id. 225; *Waugh* v. *Leech*, 28 id. 489; *Lake View* v. *LeBahn*, 120 id. 101; *Indianapolis* v. *Kingsbury*, 101 Ind. 200.

A sale of lots or blocks with reference to the plat, whether recorded or not, amounted to an immediate and irrevocable dedication of the streets, so far as the owner is concerned. Dillon on Mun. Corp. chap. 17, sec. 503; Angell on Highways, sec. 149; *United States* v. *Chicago*, 7 How. 185; *Gregory* v. *Lincoln*, 17 Neb. 352.

As to acceptance, and its proof, see *Rees* v. *Chicago*, supra; *Littler* v. *Lincoln*, 106 Ill. 353; *Green* v. *Town of Cannon*, 27 Conn. 157; *People* v. *Jones*, 6 Mich. 176; 37 Me. 506; Angell on Highways, (3d ed.) 137.

Acceptance of a part is an acceptance of the whole. *Derby* v. *Alling,* 40 Conn. 410; *Henshaw* v. *Hunting,* 1 Gray, 203; *Mayor* v. *Banking Co.* 1 Beasby, 547; *Lake View* v. *Le Bahn,* 120 Ill. 103; *Shea* v. *Ottawa,* 67 Iowa, 39.

Messrs. MUNROE & GEER, for the appellee:

The plat was not made in accordance with the statute. Rev. Stat. 1845, chap. 25, secs. 17-21; *Princeville* v. *Auten,* 77 Ill. 325; *Thomas* v. *Eckard,* 88 id. 593; *Auburn* v. *Goodwin,* 128 id. 57; *Winnetka* v. *Prouty,* 107 id. 218.

Appellant is estopped, by the judgment in ejectment in 1885, from claiming title by dedication. *Dummer* v. *Jersey City,* 20 N. J. L. 86; *Methodist Church* v. *Hoboken,* 4 Vroom, 13; *Hoboken Co.* v. *Mayor,* 30 N. J. L. 543; *Chicago* v. *Wright,* 69 Ill. 322.

The recording of the plat was, at best, a mere offer to make a common law dedication of the strip in question. *Trustees* v. *Walsh,* 57 Ill. 363; *Gould* v. *Howe,* 131 id. 496.

To complete a dedication to a public use, the offer to dedicate must be accepted. There can be no complete dedication until there is an acceptance. This rule applies equally to statutory and common law dedications. *Princeton* v. *Templeton,* 71 Ill. 88; *Trustees* v. *Walsh,* 57 id. 370; *Grube* v. *Nichols,* 36 id. 96; *Littler* v. *Lincoln,* 106 id. 354; *Winnetka* v. *Prouty,* 107 id. 218; *Hamilton* v. *Railroad Co.* 124 id. 235.

The evidence to prove a dedication must be clear and satisfactory as to the offer to dedicate, and its acceptance. The acts both of the donor and of the public authorities should be unequivocal and satisfactory, of the design to dedicate, on the one part, and to accept and appropriate to public use, on the other part. To doubt as to either is to decide against the alleged dedication. *Grube* v. *Nichols,* 36 Ill. 96; *Trustees* v. *Walsh,* 57 id. 363; *Kyle* v. *Logan,* 87 id. 64.

The acceptance of the dedication must be shown by the acts of the public authorities. Mere travel by members of the

community is not sufficient for this purpose. The proposed highway can be accepted only by the public officers having charge of the subject. Acceptance of the highway charges the municipality with the duty of keeping it in repair, and that duty can not be imposed upon it without its consent. *Littler* v. *Lincoln*, 106 Ill. 369 ; *Gentleman* v. *Soule*, 32 id. 272 ; *Baker* v. *Johnson*, 21 Mich. 346 ; *Irving* v. *Ford*, 65 id. 249 ; *Forbes* v. *Balenseijer*, 74 Ill. 187 ; *Insurance Co.* v. *Littlefield*, 67 id. 373.

As acceptance imposes a burden upon the public it will not be presumed, but must be proven by clear and positive evidence. *Littler* v. *Lincoln*, 106 Ill. 369 ; *Wiley* v. *People*, 36 Ill. App. 610.

The action of the trustees of Lake View in giving permission to the private land owners to build the pleasure driveway, even if the permission extended to the strip in question, was not an acceptance of the strip. An acceptance is an actual appropriation of the property. *Bushnell* v. *Scott*, 21 Wis. 462 ; *Speir* v. *Town*, 121 N. Y. 429 ; *Blodgett* v. *Town*, 14 Vt. 295 ; *Cass County* v. *Banks*, 44 Mich. 446.

When the offer to dedicate is not evidenced by a recorded plat, made in accordance with the statute, it may be withdrawn at any time before acceptance. *Trustees* v. *Walsh*, 57 Ill. 364 ; *Forbes* v. *Balenseifer*, 74 id. 187 ; *Winnetka* v. *Prouty*, 107 id. 218 ; *Baker* v. *Johnson*, 21 Mich. 345 ; *Field* v. *Manchester*, 32 id. 279 ; *Wayen Co.* v. *Muller*, 31 id. 447 ; *Wolfskill* v. *Los Angeles*, 86 Cal. 405 ; *Littler* v. *Lincoln*, 106 id. 353 ; *Hamilton* v. *Railroad Co.* 124 id. 244.

The conveyance by Hundley of the strip was a revocation of the offer to dedicate. *Lockland* v. *Smiley*, 26 Ohio St. 100 ; *Eureka* v. *Crogan*, 81 Cal. 524 ; *Lee* v. *Lake*, 14 Mich. 12 ; *Phillips* v. *Day*, 82 Cal. 29 ; *Shellhouse* v. *State*, 110 Ind. 513 ; *Poole* v. *Huskinson*, 11 M. & W. 827.

The recording of the plat, and selling lots included in it, did not give the municipality any interest in the supposed

streets shown upon the plat: The sole effect of those acts was to give the purchasers of the lots a right of access to their property; but as between the maker of the plat, or those succeeding to his rights, and the public, the acts did not operate to vest the public with any interest in the alleged streets. *Littler* v. *Lincoln,* 106 Ill. 369; *Winnetka* v. *Prouty,* 107 id. 225; *Hamilton* v. *Railroad Co.* 124 id. 243; *Niagara Co.* v. *Bachman,* 66 N. Y. 267; *Smith* v. *Lock,* 18 Mich. 56; *Granville* v. *Jennison,* 84 id. 54; *Detroit* v. *Railroad Co.* 23 id. 175; *Clements* v. *West Troy,* 16 Barb. 253.

The acceptance of one street does not operate as an acceptance of all or of any others. The municipality is free to accept some and reject others. Any other rule would impose an unreasonable burden upon the public. *Wolfskill* v. *Los-Angeles,* 86 Cal. 405; *Bell* v. *Burlington,* 68 Iowa, 396; *State* v. *Trask,* 6 Vt. 355; *Field* v. *Manchester,* 32 Mich. 279; *Hall* v. *Meriden,* 48 Conn. 428; *Kennedy* v. *Cumberland,* 65 Md. 514.

There is no evidence or claim of a highway by prescription. To sustain it, the proof must show a continuous, uninterrupted user, adverse and under a claim of right, for twenty years. The right must be confined to a definite and precise line. No prescriptive right can be acquired, by user, to travel wild and uninclosed land. *Gentleman* v. *Soule,* 32 Ill. 272; *Warren* v. *Jacksonville,* 15 id. 236; *Shellhouse* v. *State,* 110 Ind. 509.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

It seems to us to be very clear that Hundley's subdivision of lots 3 to 21 and 33 to 37, inclusive, in Pine ·Grove, was not in conformity with the statute, and therefore did not operate as a statutory dedication or conveyance to any municipal corporation, or to the public, of any portion of the lands subdivided, for the purposes of public streets or highways. The plat of said subdivision was made, acknowledged and recorded October 24, 1855, and while the provisions of the

Revised Statutes of 1845, in relation to plats of subdivisions of land and their legal effect were in force. Said statutes provided, that when any person wished to lay out a town, or an addition or subdivision of out-lots, he should cause the same to be surveyed, and a plat or map thereof made by the county surveyor, "which plat or map shall particularly describe and set forth all the streets, alleys, commons or public grounds, and all in and out-lots, or fractional lots, within, adjoining or adjacent to said town, giving the names, widths, corners, boundaries and extent of all such streets and alleys." Such plat or map was required to be certified, acknowledged and recorded, and it was then provided that when that was done, said map or plat should be deemed in law and in equity a sufficient conveyance, to vest the fee simple of the streets, alleys, ways, etc., indicated thereon, in the corporate authorities of the town or city, in trust, for the uses and purposes therein set forth and expressed or intended. R. S. 1845, chap. 25, div. 1, secs. 17-21.

In one very material respect at least, Hundley's subdivision failed to comply with these statutory requirements. No names were given of any streets, alleys or public grounds, nor were any portion of the lands depicted on said plat even designated as streets. Particularly is it true that no name or designation whatever was given to the strip of land lying between the easterly lines of blocks 6, 7 and 12 and the lake. The statute having expressly required that plats of subdivisions of land shall give the names of streets, it must be assumed that the giving of such names was intended by the Legislature as one of the essential and necessary evidences of an intention to grant lands to the public for street purposes, and where such requirement is not complied with, either literally or in substance, the plat can not have the force of a statutory conveyance.

In *Village of Auburn* v. *Goodwin*, 128 Ill. 57, a case arising under the provisions of the Revised Statutes of 1845, we held

that a plat not made out, certified and acknowledged substantially as required by said statutes, afforded no evidence of title in the municipal corporation to the streets and alleys. In *Village of Princeville* v. *Auten,* 77 Ill. 325, the proprietors of land, in laying out and platting a village thereon, left a square blank, without any designation of its purpose, except that it was not divided into lots, and although it appeared from extrinsic evidence that the makers of the plat intended the square for public use, it was held that the plat did not constitute, under the statute, a conveyance of said square to the municipal corporation, or a statutory dedication of it to the public. In *Village of Winnetka* v. *Prouty,* 107 Ill. 218, it was held that the failure to indicate upon a plat the names of the spaces claimed to have been intended for streets, or to even call them streets, and also the failure to indicate the length and width of such spaces, was fatal to the operation of the plat as a statutory dedication or conveyance of the fee to the public. See also *Town of Lake View* v. *LeBahn,* 120 Ill. 100.

We are also of the opinion that the city of Chicago is precluded from claiming the fee in the strip of land in controversy, the title with which it would be vested if said plat could be held to operate as a statutory dedication, by the judgment in the ejectment suit set up in the bill. The city of Chicago, the defendant here, is the successor and therefore in privity with the town of Lake View, the plaintiff in that suit, and Anthony J. Drexel, the complainant here is the remote grantee, and therefore in privity with Oliver Ditson, one of the defendants to that suit, and said judgment is binding upon the present parties by virtue of such privity. The judgment in that suit was conclusive on the parties thereto that, at the time said suit was instituted, the town of Lake View was not vested with the fee to said strip of land, and it has the same conclusiveness here as between the present parties.

But it is claimed that Oliver Ditson, though named as a party defendant to said ejectment suit, was not served with process and did not appear, and that he was therefore no party to said judgment, and that neither he nor his privies can take advantage of it.

The conclusive answer to this contention is, that prior to the hearing of the present bill, a stipulation was entered into between the complainant and defendant, by which various admissions as to the facts at issue were made, and particularly, that Mason, the two Kohlsaats and said Ditson were the defendants to said ejectment suit; that said defendants pleaded not guilty, and that upon the trial a verdict was rendered finding said defendants not guilty, and that judgment was thereupon rendered on said verdict in favor of said defendants. A solemn stipulation by a party as to the facts, so long as it stands, is conclusive between them, and can not be met by evidence tending to show that the facts are otherwise. If a stipulation has been entered into unadvisedly or through misinformation, the party injured should seek, by some direct proceeding, to have is set aside and cancelled, but such party will not be permitted to dispute by evidence a fact solemnly admitted by such stipulation, the stipulation being still in force. Evidence was offered tending to show that Ditson was not in fact served with process and did not appear in the ejectment suit, but in view of the stipulation by the city to the contrary, the court below was justified in disregarding such evidence.

There being an entire failure to show a statutory dedication of the strip of land in question for the purposes of a street, the question remains whether the evidence is sufficient to establish a common law dedication. To prove such dedication, both an intention on the part of the owner of the land to make it, and an acceptance of such dedication by the proper public authorities must be shown, and the proof as to these facts must be clear and unequivocal. As said in *Grube* v. *Nich-*

*ols*, 36 Ill. 92 : "To make a sufficient dedication, the owner of the soil must devote the right of way to public use, and it must be accepted and appropriated by the public to that use by travel, and a recognition as a public highway by the proper authorities, by repairs or otherwise. But when a dedication is relied upon to establish the right, the acts of both the donor and the public authorities should be unequivocal and satisfactory of the design to dedicate on the one hand and to accept and appropriate to public use on the other." See also *Trustees* v. *Walsh*, 57 Ill. 363 ; *Kyle* v. *Town of Logan*, 87 id. 64.

It must of course be conceded that where the owner of a tract of land subdivides it, and makes, acknowledges and records a plat of his subdivision, designating thereon certain strips of land as streets or highways, such plat, though not made in accordance with statutory requirements, will be evidence of an intention, as well as of an offer, to dedicate to the public a right of way over the strips of land thus designated, as at common law. *Trustees* v. *Walsh, supra; Gould* v. *Howe*, 131 Ill. 490. The plat in this case, however, fails to designate any strips of land as public streets or highways, all that appears on it being, certain blocks of designated dimensions and numbers, part of which are subdivided into lots consecutively numbered, with strips of land of certain designated widths lying between the blocks. Nothing appears, apart from their form, location and dimensions, indicating the purpose for which said strips of land are laid out, or to which it was the intention of the maker of the plat to devote them.

Now while it may be true that, notwithstanding all this, the plat, when considered in connection with other evidence in the case, may furnish some evidence of an intention to dedicate said strips of land to the public for the purposes of streets or highways, its force, when considered alone, is very greatly weakened by the fact above noted, that no parts of the land subdivided are designated as streets or highways.

There is no rule of law which forbids the subdivision of land by the owner in such way as to establish over it only private ways for the sole benefit of those who may become owners of lots in the subdivision, and in which the public, as such, will have no interest and over which it will have no control, and we are unable to see that the plat in question may not be, so far as is shown by anything appearing on its face, quite as consistent with such intention, as with an intention to donate a right of way over such land to the public.

It should be observed that no question as to the private rights of the owners of lots in said subdivision is before us. No private owners of lots are parties to the bill, and so far as we are advised, none of them are desiring to contest the relief which the complainant is seeking by his bill to obtain as against the city of Chicago. It may be admitted that owners of lots in said subdivision who have purchased by the plat, are entitled to certain easements in and over the grounds laid off on said plat as ways, but their right to such easements has no tendency to establish the title of the city to said ways as public streets or highways.

The evidence principally relied upon by the city to establish a common law dedication of the strip of land lying between the easterly lines of blocks 6, 7 and 12 and the lake as a public street, consists of the testimony of witnesses as to declarations of Hundley at the time the plat was executed, and at various times thereafter, down to the date of his conveyance of his interest in said strip of land to the remote grantors of the complainant. This evidence is quite voluminous, and tends to prove declarations by Hundley, some of which were to the effect that said strip of land was a public street, or would be a public street, and other declarations to the effect that he had never dedicated said land to the public, but merely for the benefit of lot owners. Some of these declarations, if made in the language attributed to Hundley by the witnesses, would have a strong tendency to show an inten-

tion on his part to dedicate, or perhaps an actual dedication. But when the whole evidence is taken together, especially in view of the fact that its value depends upon the accuracy of the memories of witnesses as to conversations which took place from twenty to thirty-five years before their testimony was taken, we are unable to say that it furnishes that clear and unequivocal evidence of an intention to make the dedication which the law requires.

But the city, in its effort to establish its right to the use of said strip of land as a public street, is confronted by another obstacle which is equally insurmountable, viz., the absence of evidence tending to show an acceptance of the alleged dedication by any competent public authority. Said strip of land consists of a sandy beach, sometimes of greater and sometimes of lesser width, dependent upon the action of the waters of the lake, the action of said waters having, at certain times, proceeded so far as to cut entirely through said strip and to wash away a part of said block 12. To prevent the encroachments of the lake and thus save their property from destruction, the owners of block 12 have been compelled, at very considerable expense, to drive piles and construct piers east of said block and in said strip of land. The evidence tends to show that, with the exception of a short time during which a way constructed by private parties, was maintained over it, said strip of land is and always has been substantially in its natural state, being a rough, uneven, sandy shore, with numerous depressions and elevations, and wholly unfit for public travel.

We fail to find in the record any clear, distinct or unequivocal evidence of an acceptance of said dedication prior to September 18, 1871, the date at which Hundley executed to Nixon a deed purporting to convey to him all the grantor's interest in that part of section 21, etc., lying east of said block 12. In fact, we find no evidence of any acts of the authorities of said town during that entire period of over fif-

teen years, even tending to establish an acceptance or an intention to accept a dedication of the strip of land on the lake shore for a street.

As tending to show an acceptance of the dedication, reliance is placed upon certain proceedings of the board of trustees of the town of Lake View at a meeting of said board held November 14, 1870. At that meeting a petition on behalf of the Lake View Avenue Company, a private corporation organized for the purpose of constructing a drive or roadway along the lake shore, from a point north of the premises in question to a point south of said premises, was presented to said board, signed by Samuel H. Kerfoot, the secretary of said company, requesting permission to construct its drive or roadway on the street known as Sedgwick street, extending from Diversey street to Walsh street, "and on the highway lying east of blocks 6, 7 and 12, in Hundley's re-subdivision," etc. It appears that a motion was made and carried granting said petition, but that said motion was immediately thereafter reconsidered, and the matter postponed to a subsequent meeting. At a meeting of said board held December 10, 1870, the said petition was again considered and a resolution passed appointing a committee, with power to act, to confer with said company, in relation to the right of way over and across the streets and alleys indicated by the plat of its route and petition, and to arrange terms and conditions upon which the right of way be granted said company. Said committee was appointed, but there is no evidence that anything further was done, but it appears that said company soon after abandoned its scheme, and no further action seems to have been taken in the matter of said petition.

We are unable to see any tendency in this evidence to prove any acceptance by the town of Lake View of the dedication of the land in question for a street. The only reference to said strip of land as being.a street is found in the petition of the company seeking to obtain a right of way over it and even .

if the vote granting the petition could be regarded as a recognition of the truthfulness of the fact assumed by the petition, the vote by which the petition was granted was immediately reconsidered, thus placing the whole matter in the same situation as though no action had been taken.  In the subsequent action of the board there is nothing furnishing any indication, one way or the other, as to whether the town board intended to treat the strip of land in question as a street or not.  Placing upon this evidence the construction most favorable to the city, it is manifestly too vague, uncertain and equivocal to fill the legal requirements in relation to proof of an acceptance of a dedication.

It is also urged that the acceptance by the municipal authorities of the town of Lake View of other streets in said Hundley's subdivision is to be regarded as a constructive acceptance of a street over the strip of land in question.  The rule, which seems to be abundantly supported by the authorities, is, that when a person, in platting property, maps out streets thereon, the authorities may accept them in whole or in part.  An acceptance of a part is no acceptance of the whole.  *Field* v. *Manchester,* 32 Mich. 279; *Kennedy* v. *Cumberland,* 65 Md. 514; *Bell* v. *City of Burlington,* 68 Iowa, 296; *State* v. *Trask,* 6 Vt. 355; *Wolfskill* v. *Los Angeles,* 86 Cal. 405; *Hall* v. *City of Meriden,* 48 Conn. 416; *Village of Winnetka* v. *Prouty,* 107 Ill. 218.

The authorities also seem to be clear that, since to render a dedication complete and effectual, it must be accepted by the public, it is, before acceptance, a mere offer, which the owner of the land may revoke at any time.  *County of Wayne* v. *Miller,* 31 Mich. 447; *Field* v. *Manchester,* 32 id. 279; *Baker* v. *Johnson,* 21 id. 319; *Philips* v. *Day,* 82 Cal. 24; *Wolfskill* v. *Los Angeles, supra; Forbes* v. *Balenseifer,* 74 Ill. 183; *Village of Winnetka* v. *Prouty,* 107 id. 218; *Trustees* v. *Walsh,* 57 id. 363; *Littler* v. *City of Lincoln,* 106 id. 353; Mills' Thompson on Highways, (5th ed.) 52.

We are of the opinion that Hundley's conveyance of the strip of land in question to Nixon September 18, 1871, was in law a revocation of his offer to dedicate said land to the public for the purposes of a public street, and that no acceptance of the dedication by the authorities of said town or its successors subsequent to that date could be of any avail.

We think, in view of the entire record, that the decree of the Superior Court is right, and it will therefore be affirmed.

*Decree affirmed.*