The Chicago, Milwaukee and St. Paul Railway Company, Defendant in Error, vs. The City of Chicago, Plaintiff in Error.—The Mechanical Rubber Company, Defendant in Error, vs. The City of Chicago, Plaintiff in Error.

*Opinion filed June 16, 1914.*

1. Dedication—*common law dedication is only complete upon acceptance—how acceptance is shown.* An express acceptance of a common law dedication may be shown by some order, resolution or action of the public authorities made and entered of record, or it may be implied by acts of the public authorities recognizing the existence of the offered street and treating it as a public highway, but in either event the proof of acceptance must be unequivocal, clear and satisfactory.

2. Same—*what is not sufficient to show acceptance of common law offer of dedication.* The fact that the map department of a city, some twenty years after the filing of a plat of a subdivision, made a map reproducing the plat and filed the same as part of the records of the map department of the city, does not, of itself, show an acceptance by the city of a common law offer to dedicate a strip shown on the plat for public use as a street, even though the map made by the city gives appropriate street numbers to property adjoining the strip.

3. Same—*death of one of dedicators before acceptance revokes offer.* If one of the makers of a plat evidencing a common law offer of dedication dies before the dedication is accepted the offer of dedication is revoked by implication.

4. Same—*when an acceptance of part of streets does not raise the presumption of acceptance of others.* The fact that a city has opened and improved certain streets lying north of a road dividing a subdivision does not raise any presumption that strips shown on the plat south of the dividing road were accepted by the city as streets, where for more than thirty years such strips have been in the open, continuous, adverse and undisputed possession of private owners without any attempt by the city to improve them as streets.

Writ of Error to the Superior Court of Cook county; the Hon. William E. Dever, Judge, presiding.

William H. Sexton, Corporation Counsel, and Nicholas Michels, (A. L. Gettys, of counsel,) for plaintiff in error.

Ela, Grover & March, (Frank R. Grover, of counsel,) for defendants in error.

Mr. Justice Cooke delivered the opinion of the court:

The defendants in error, the Chicago, Milwaukee and St. Paul Railway Company and the Mechanical Rubber Company, are each in the possession of and claiming to own separate portions of certain strips of land sixty-six feet in width located in the city of Chicago, one of which strips is in the line of West Ohio street extended and the other in the line of Washtenaw avenue extended. On November 23, 1911, each of the defendants in error filed its bill in chancery in the superior court of Cook county to quiet title to those portions of said strips of which it was in possession and to which it claimed title. The causes were referred to a master, and upon the filing of the master's report decrees were entered granting the relief sought by the respective bills. The city of Chicago, which was made a defendant in each bill, sued out writs of error from this court to review these proceedings, and as each case depends upon the same state of facts the causes have been consolidated in this court.

The only question to be determined is whether the strips in question are public streets of the city of Chicago or the private property of defendants in error to the extent of their respective possessions. One of the strips extends east and west along the center line of a quarter section of land formerly owned by Edward Wright and Joseph D. Webster, and the other extends a short distance north from this strip and at right angles to it. The parties have confined their controversy in this court to the strip extending east and west and claimed by the city to be a part of West Ohio street.

In the year 1852 Wright and Webster, who owned the land as tenants in common, filed in the office of the re-

corder of deeds of Cook county a plat of a subdivision of said quarter section, which adjoined the city of Chicago on the west. It is conceded by the parties that this was not a statutory plat, and that if there was any offer of dedication it constituted no more than a common law offer. By this plat the quarter section was subdivided into sixteen lots or blocks. One strip was shown on this plat extending east and west through the center of the quarter section. Three strips were shown, extending through the quarter section north and south and equidistant east and west. It is contended that the plat does not contain sufficient data to indicate that it was the intention of the makers of the plat to dedicate these strips to the use of the public. The record is in such condition as to make it difficult to determine the intention of the makers of the plat in this respect. A plat attached to each of the bills was offered in evidence before the master and was considered by the master and the chancellor. It is conceded that this plat is not an exact copy of the original. Another plat appears in a supplemental record filed in the case of the Chicago, Milwaukee and St. Paul Railway Company which purports to be a copy of the original, but while the parties stipulate that this plat was filed as an exhibit with the master's report, no reference was made to the same in the report of the master and it does not appear from the record that it was ever offered in evidence or was before the master for consideration. The plat attached to the bills and considered by the master is insufficient to show an intention to dedicate the strips indicated to a public use, whereas the plat contained in the supplemental record, but which we are unable to find was introduced in evidence or considered by the master or by the chancellor, is sufficient, under our holdings, to show an intention to dedicate the strips, including the one in question, as public streets. Owing to the condition of the record we are unable to decide that question, but assuming, as a basis for the decision of the other questions involved, that the

plat does constitute a valid common law offer of dedication, the strip in question was never dedicated as a public street for the reason that the offer of dedication was not accepted.

At the time of the filing of the plat by Wright and Webster the quarter section so subdivided was outside the corporate limits of the° city of Chicago. In 1869 the legislature annexed this subdivision to the city of Chicago. At the time this plat was made a highway known as Whisky Point road extended diagonally across the quarter section from a point about forty rods north of the south-east corner thereof to a point about twenty rods south of the northwest corner thereof. This was an open, traveled public highway, and at the time this subdivision was annexed to the city of Chicago the legislature changed the name of this highway to Grand avenue, and it has since been known by that name. From the time the plat was made, in 1852, until some time after the annexation to the city of Chicago, this quarter section was vacant, unimproved land and had no street or highway through it anywhere except Whisky Point road, or Grand avenue. This highway was not shown or indicated upon the plat made by Wright and Webster. It appears that the first improvements made in this subdivision were along Grand avenue a number of years after the subdivision became a part of the city, the exact time not being shown. Certain of the strips of land shown upon the plat of Wright and Webster north of Grand avenue were opened by the public and used as streets. No streets have been opened in any portion of this subdivision south of Grand avenue.

Defendants in error and their grantors have been in the open, continuous, adverse and undisputed possession of the strip of land in controversy here for thirty years, each having used the portion claimed by it in connection with the adjoining land owned by it. It is stipulated that prior to the taking of possession of this strip by the defendants in error or their grantors the same was vacant and unoccu-

pied and had been abandoned for more than twenty years, and that since the year 1852 there has been no assumption, or pretension of assumption, of any possession or interest in, claim or title to said strip by any person or persons or corporations other than the defendants in error and their immediate grantors. The parties further stipulate that no part or parcel of said strip has ever been traveled or used as a public highway, or has ever been graded, accepted or in any way worked or improved by any municipal authority or officers as a public highway; that directly east of said strip and within the line of the strip extended, which would also be within the line of West Ohio street extended, there is a stone quarry, which has been excavated to a depth of more than one hundred feet, and an engine house used in connection therewith, and that the same has been in the actual and continuous use as such for more than twenty years last past by private persons or corporations other than the city of Chicago. The strip in question, and that part of it extended which includes the stone quarry and engine house, are south of Grand avenue.

The city bases its contention that the offer to dedicate this strip has been accepted upon two grounds: (1) That in 1872 the city of Chicago caused and permitted to be made a map similar to the recorded plat of Wright and Webster, designating upon the said map as Ohio street the strip of land running east and west through the subdivision, which includes the strip in question, and thereafter, and up to the present time, has caused and permitted such map, or duplicates thereof, to remain on file as a part of the records of the map department of the city of Chicago and as a part of the public records of the city, and that said strip has for fifteen years and more last past appeared upon the public maps of Cook county and the city of Chicago as a part of West Ohio street, and that under the ordinances of the city of Chicago the property on both sides of said street has been given appropriate numbers, which are shown upon

the public maps of the city; and (2.) that as within the past thirty years streets have been opened and improved in this subdivision north of Grand avenue and were thus accepted, it must be presumed that all the streets in the subdivision have been accepted.

A common law dedication is only complete upon ac-. ceptance. An express acceptance may be shown by some order, resolution or action of the public authorities made and entered of record, or it may be implied by acts of the public authorities recognizing the existence of the street and treating it as a public highway, but in either event the proof of acceptance must be unequivocal, clear and satisfactory. (*City of Chicago* v. *Drexel,* 141 Ill. 89; *City of Carlinville* v. *Castle,* 177 id. 105; *People* v. *Johnson,* 237 id. 237; *City of Princeton* v. *Gustavson,* 241 id. 566.) In this case there was no express acceptance shown by any order, resolution or action of the public authorities made and entered of record. In advancing the doctrine that acceptance may be implied from the acts of the public authorities in recognizing the existence of the street and treating it as such, the city relies wholly upon the action of the map department in making a reproduction of the plat filed by Wright and Webster and indicating thereon, through the strip in question, a street which is designated as West Ohio street, and placing upon the adjoining property, on each side of the strip, appropriate numbers. This act, alone, is not sufficient to constitute an acceptance of a common law offer of dedication. Authorities have been cited where the proof of making such maps has been considered, in connection with the proof of other acts on the part of a city, as implying an acceptance of the offer of dedication, but we have not been referred to any case which holds that the making and filing of such a map, alone, is sufficient to establish an acceptance. The making and filing of such a map by some employee of the city would not be sufficient to bind the city, and is therefore not sufficient proof, in

itself, of an acceptance of an offer of dedication on the part of the city.

In support of the second ground relied upon, the city seeks to apply the doctrine announced in *Kimball* v. *City of Chicago*, 253 Ill. 105, that where it clearly appears that the principal streets and alleys of a subdivision have been accepted by the municipality the presumption then obtains that all the streets and alleys of the subdivision have been accepted, unless there is something that shows the acceptance was limited. The doctrine there announced is the correct one, and as applied to the facts in this case discloses that there has been no acceptance on the part of the municipality of the streets designated on that part of the plat lying south of Grand avenue. At the time of the filing of the bills herein fifty-nine years had elapsed since the filing of the plat by Wright and Webster. During all that time the strips of land indicated on that plat lying south of Whisky Point road or Grand avenue were either vacant, unoccupied and abandoned, or, as has been the case for at least thirty years past, were in the open, continuous, adverse and undisputed possession of private persons or corporations other than municipalities, and during all that time no act was done on the part of the city of Chicago or of the public, aside from the making and filing of the maps referred to, which would indicate any intention to accept the offer of dedication. It does not appear when the strips of land north of Grand avenue were opened and improved as public streets. Edward Wright, one of the dedicators, died September 24, 1873. If his death occurred before the acceptance of the offer of dedication as to any of these streets the offer to dedicate was revoked, by implication, by his death. (*People* v. *Johnson, supra.*) In any event, and even though the streets north of Grand avenue were opened and improved before the death of Edward Wright, the city clearly showed its intention of accepting only those streets lying north of Grand avenue; and after having permitted

conditions to remain as they have been since the annexation of this territory in 1869 down to the present time, it can not now be permitted to insist that merely by accepting the streets north of Grand avenue it thereby accepted those lying south of that street.

The decree of the superior court in each of the consolidated causes is affirmed.   *Decrees affirmed.*