(No. 17094.—Reversed and remanded.)
HENRY GIETL, *et al.* Appellees, *vs.* GEORGIA LITTLE SMITH,
Appellant.

*Opinion filed February 18, 1926—Rehearing denied April 9, 1926.*

1. PLATS—*intention to dedicate and acceptance by public must be clearly shown in case of common law plat.* To constitute a dedication, at common law, of land for a public use, such as a street or alley, the proof must be clear and convincing that the owner intended to donate his land to the public for such use and that the public have accepted it for that purpose.

2. SAME—*what necessary to show acceptance of common law dedication to public use.* Acceptance of a common law dedication to public use may be shown by some formal act of the public authorities, or it may be implied by acts of the latter in repairing, lighting or otherwise assuming complete control and supervision over the land dedicated or by sufficient general use by the public for the purposes dedicated, and such acceptance must be shown to have taken place within a reasonable time after the plat is offered, and the proof must be unequivocal, clear and satisfactory.

3. SAME—*a common law plat is merely an offer to dedicate, which may be withdrawn.* Prior to acceptance by the public a common law plat is merely an offer to dedicate, which offer is subject to withdrawal or revocation by the owner or his grantee, and what constitutes a revocation is usually a question of fact in each particular case.

4. SAME—*what may be shown to establish revocation of common law dedication.* Acts inconsistent with the public use to which the land was offered to be dedicated by a common law plat, such as a conveyance of the property, enclosure of the land so as to prevent or exclude public use, or the erection of a building upon the land offered to be dedicated, may be shown for the purpose of establishing a withdrawal or revocation of the offer to dedicate prior to the acceptance of such dedication.

5. MUNICIPAL CORPORATIONS—*acceptance of portion of street or alley is not an acceptance of entire dedication.* A municipality may accept and assume control over a part of the streets and alleys shown on a common law plat, but such acceptance does not necessarily constitute an acceptance of the entire property offered to be dedicated.

6. SAME—*when city is not shown to have accepted dedication of alley.* A municipality is not shown to have accepted a dedica-

tion of an alley to public use by a common law plat where there is no proof of any act on the part of the city or its officials in either accepting, improving or maintaining the alley, but, on the other hand, in paving the street to which the alley led, the city built the curb straight along the street, indicating no intention of assuming control of the alleged alley.

7. LIMITATIONS—*public use of vacant property is presumed permissive.* The use of vacant and unoccupied land by the public is presumed to be permissive and not adverse.

8. HIGHWAYS—*what necessary to establish a public way by prescription.* To establish a highway or public way by prescription it is necessary to show a use by the public generally, under a claim of right, adverse, open, notorious, exclusive, continuous and uninterrupted for the statutory period; and while express notice of the claim of the public is not necessary, there must be such conduct on the part of the public authorities as to reasonably inform the owner that the highway is used under a claim of right.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

BARBER & BARBER, for appellant.

ANDRUS & TRUTTER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

On October 21, 1921, certain property owners in the city of Springfield filed a bill for injunction in the circuit court of Sangamon county claiming that Georgia Little Smith (hereafter referred to as appellant) was unlawfully obstructing a 16-foot alley extending east and west through block 17·of the old town plat of the city of Springfield. The bill sought to enjoin the obstruction of the alley, to obtain the perpetual right to use the same, and to compel appellant to remove a frame dwelling occupying a space approximately 9 feet north and south by 49 feet east and west of the alleged alley, at its west end. Appellant filed her answer, denying the material allegations of the bill and that complainants had any right, title or interest in the 16-foot strip of land, and averring that the estate of Gershom J. Little, her father, of which estate she was trustee,

owned the south 157 feet of block 17, and that she was the owner in fee simple of the tract of land in controversy, having acquired title thereto by *mesne* conveyances from John Todd. The cause was referred to the master in chancery to take the proof and report his findings of fact and conclusions of law. The master made his report, finding, among other things, that complainants were the owners of the respective properties as alleged in the bill to be owned by them, and that all complainants owning property in block 17, except Louis and Henry Gietl, derived title from the proprietors of Williams' subdivision of the north part of block 17, but throughout their respective claims of title prior to such subdivision the several conveyances refer to block 17 of the old town plat; that the old town plat was not a statutory plat, but had at all times been recognized by the owners of property lying within its boundaries, and by the public generally, in the conveyance of real estate therein and in the use and occupancy of streets and alleys as shown thereon; that the legal title to the 16-foot strip in controversy was in appellant; that a frame dwelling occupied a space 9 by 49 feet at the west end of the strip; that while the residence has been so located for twenty years prior to this suit, the building did not completely prevent use of the ground as an alley until a short time before suit, when a pole was placed opposite and north of the house, near the north line of the alley; that for more than forty years prior to this action the greater portion of the strip had been used by the public as an alley, which use was not by way of license from the owner but under claim of right and by virtue of the old town plat; that the public had become and were entitled to the free and unobstructed use of the 16-foot tract as an alleyway, and the master recommended that appellant be ordered to vacate the same and be perpetually enjoined from further obstructing such alley. Objections were filed both by complainants and appellant, all of which were overruled and stood as exceptions before the chancel-

lor. The exceptions were overruled by the chancellor and a decree entered approving the report and recommendations of the master. By the decree appellant was ordered to remove the dwelling house within four months from the date of the decree. From that decree she has prosecuted an appeal to this court.

The material facts developed upon the hearing were substantially as follows: In December, 1823, there was filed for record in the recorder's office of Sangamon county a plat designated "Town of Calhoun." It does not appear by whom or by what authority the plat was filed, as it bears no certificate of survey or surveyor's signature, no date, certificate of adoption or owner's signature. The blocks and lots thereon are numbered, and the block here involved is designated upon the plat as "17." It is bounded by Washington street on the north, Second street on the east, Adams street on the south and First street on the west. The block has eight lots. The north half of the block contains lots 1 to 4, which are 157 feet north and south and 80 feet east and west. The south half of the block contains lots 5 to 8, and are the same size as just stated. Between the two tiers of lots, and extending from east to west through the center of the block, is a vacant space designated as 16 feet in width, which was doubtless intended for an alley though no such space is anywhere so named or designated upon the plat. It will be seen that each half of the block is 157 feet north and south, not counting the 16-foot vacant space intended for an alley. Near the north end of lot 2 in the block is the section corner of sections 27, 28, 33 and 34. The record shows that the four quarter sections of land in the aforesaid sections having a common corner were entered by four persons in 1823 and 1824, and title to any portions thereof included in block 17 passed from the respective entrymen by deeds, using metes and bounds descriptions, to Charles R. Matheny, who thereafter, in 1827, by warranty deed conveyed all of block 17, including the

alleged 16-foot alley, by metes and bounds description, to John Todd. An act of the legislature in 1833 provided for making a re-survey of the town of Springfield, and provided that all deeds made for lots from that part of the town plat recorded as Calhoun be declared valid, and thereafter the plat of the town of Calhoun was to be known and declared as a part of the town of Springfield. Pursuant thereto a plat was made, certified by a surveyor, acknowledged by the Sangamon county commissioners and filed for record in 1836. This plat included additional territory but was substantially the same as the 1823 plat of the town of Calhoun, except that block 17 was designated on the 1836 plat as Todd Square. The number "17" appears near the center of the square space, but no lots were designated or numbered thereon and no alley was shown in the block. This plat was not signed by all the owners of property included in the plat, nor was John Todd, who was at that time the owner of all of block 17, a party to the plat. The master found this was not effective as a statutory plat. By deed in 1855 Todd and wife conveyed to John Cook all of block 17 north of the 16-foot strip, using the following metes and bounds description: "Beginning at the northeast corner of block 17, in the city of Springfield; thence west along the south line of Washington street to the northwest corner of said block; thence south along the east line of First street 157 feet to the alley; thence east along the north line of said alley to the west line of said Second street; thence north along the north [east] line of Second street 157 feet to the place of beginning." Two years later, in 1857, Todd and wife by deed conveyed to the same grantee, Cook, the 16-foot strip of land here in controversy, describing it by metes and bounds. The next year (1858) Cook and wife by metes and bounds description conveyed the 16-foot strip to one Crowder, against whom a judgment was later obtained in the circuit court of Sangamon county, execution levied, and by sheriff's deed in 1880 title to said strip passed

to the father of appellant, who at that time, as stated in appellant's brief, had acquired title to the south half of block 17. In 1905 the father and mother of appellant conveyed the 16-foot strip to her by metes and bounds description. John Cook, who, as stated, owned both the north 157 feet of block 17 and the 16-foot strip alleged to be an alley, at some time conveyed title to the north 157 feet of block 17 (except, as stated in the brief of appellees, a rectangular tract located in the southeast corner of the north half of the block,) to John Williams. The record contains no proof as to how title passed from Cook to Williams, except by stipulation that he did acquire title to "the north 157 feet of said block 17, which is embraced in G. & H. C. Williams' subdivision hereinafter mentioned." A residence was on the property, a board fence was along the south side thereof, and Williams or some of his relatives lived there until his death, in 1890. Thereafter Williams' two sons, George and Henry, obtained title to his property through a decree in a partition suit in the circuit court of Sangamon county. In this action a plat or map was made by the commissioners appointed in the proceeding and the plat approved by the court in 1895. This plat shows "block 17, old town plat, Springfield, Ill.," but no lots or alley is shown thereon. The north 165 feet of the block except a rectangular tract 65 feet north and south by 130 feet east and west, located in the southeast corner thereof, is shaded, and appearing therein are the names "George & Henry C. Williams." This plat of the block shows the Williams property extending to the middle of the block and the distance north and south to be 165 feet, while the stipulation just referred to as appearing in the record shows Williams, the deceased father, whose estate was then being partitioned, only acquired title to the north 157 feet of the block. The following year (1896) the two sons subdivided the north half of block 17, received by them through the partition suit, and filed a statutory plat known as G. & H. C. Wil-

liams' subdivision, dividing it into eight lots, facing Washington street on the north and showing the rectangular tract 65 by 130 feet in the southeast part of the north portion of the block. The five west lots, which are full-size lots, are shown to be 157.8 feet long from north to south, and an 8-foot alley is shown extending east and west through the middle of the entire block along the south side of said lots and the rectangular tract just mentioned.

All of complainants owning property in block 17, except Louis and Henry Gietl, derived title by reference to Williams' subdivision plat. The Gietls are the owners of the rectangular tract previously referred to as located in the southeast corner of the north half of block 17. This is shown by a stipulation stating that by deeds in 1910 the Gietls acquired title to the south 58 feet of the north 130 feet of the north half of block 17 of the old town plat, and that said deeds purport to also convey a strip of ground eight feet wide lying along the south side thereof. The description in the stipulation must be intended to be the south 58 feet of the east 130 feet of the north half of block 17, otherwise the tract could not be located as shown on the last two plats mentioned. The partition suit plat shows this tract as 65 feet by 130 feet in size and extending to the middle of block 17, the south line of the tract being on a line with the Williams property south line, while the Williams subdivision plat shows the tract to be 65.3 feet by 130 feet, with an additional 8-foot alley on the south side of the tract. In other words, the rectangular tract as it appears on the Williams subdivision plat is eight feet further north than its location as shown on the plat submitted and approved by the court in the Williams partition suit. We mention this for the reason that we are not certain as to the exact size and location of the Gietl tract, and for the further reason that the record, so far as we are able to find, contains no proof, except by stipulation as stated, showing how or by what description the Gietls ac-

quired title to their tract from John Cook, nor does the record show, except by stipulation also heretofore mentioned, how or by what description John Williams received title to the remainder of the north half of block 17 from Cook, who, it will be remembered, had acquired by metes and bounds description all of the north half of block 17, and also the 16-foot strip in controversy, from John Todd.

The record title to the 16-foot strip, or alleged alley, as shown by the record, was in appellant's father (her predecessor in title) at the time of the John Williams partition suit, in 1895, and also at the time of the filing of the Williams subdivision plat, in 1896, by the two sons of Williams.

It is the contention of appellees that the 16-foot strip was a public alley both by the plat of 1823 and by prescription; that appellant's deed thereto was a nullity and she could obtain no rights in the alley by adverse possession. Counsel for appellant contend there was no dedication of a public alley and no prescriptive right thereto was acquired.

It is conceded that no statutory dedication is here involved, hence in considering the question whether the strip in controversy was dedicated as an alley, the principles which govern common law dedications must necessarily be applied. The long established rule is, that to constitute a dedication, at common law, of lands for a public use, such as a street or alley, the proof must be clear and convincing that the owner intended to donate his land to the public for such public use and that the public have accepted it for that purpose. (*City of Chicago* v. *Drexel,* 141 Ill. 89; *Doss* v. *Bunyan,* 262 id. 101; *Rose* v. *Village of Elizabethtown,* 275 id. 167.) Making a common law plat and selling lots therefrom is evidence of an intention to dedicate, but to create public rights to streets, alleys or other lands for public use as shown thereon such plat must be accepted and acted upon by the public. The acceptance may be shown by some formal act by the public authorities, or it may be implied by the acts of the latter by repairing,

lighting or otherwise assuming complete control and super-
vision over the lands dedicated or by sufficient general user
by the public for the purposes dedicated. The proof of
such acceptance by the public must be unequivocal, clear and
satisfactory. (*City of Chicago* v. *Drexel, supra; City of
Carlinville* v. *Castle,* 177 Ill. 105.) Such acceptance does
not necessarily have to take place immediately after the plat
is offered but must be made within a reasonable time, after
which, in the case of a street or an alley, an easement of
passage is acquired by the public. However, prior to such
an acceptance by the public a common law plat is merely
an offer to dedicate, which offer is subject to withdrawal
or revocation by the owner or his grantee. What consti-
tutes such a revocation is usually a question of fact arising
in each particular case. Acts inconsistent with the public
use to which the land was offered to be dedicated, such as
a conveyance of the property, enclosure of the land so as
to prevent or exclude public use, or the erection of a build-
ing upon the land offered to be dedicated, may be shown
for the purpose of establishing a withdrawal or revocation
of an offer to dedicate prior to the acceptance of such dedi-
cation. *Rose* v. *Village of Elizabethtown, supra.*

In the case at bar the town of Calhoun plat, showing
the undesignated or blank space extending through the mid-
dle of block 17 and filed in the recorder's office of Sanga-
mon county in 1823, was not authenticated or signed by
anyone, and no one seems to know how or by what author-
ity it became a matter of record. The lands included there-
in were owned or had been entered by different persons, and
seemingly patents had not then been issued for either of
the four quarter sections which had a common corner in
block 17. No dedication of the strip in controversy alleged
to be an alley, as shown in this block, could attach to these
entrymen, for prior to any acceptance by the public of the
1823 plat, so far as is shown by the record, the respective
entrymen by metes and bounds description conveyed their

respective rights, title and interest in all of block 17, including the supposed alley, to one Matheny, who in 1827 conveyed the entire block by metes and bounds description to John Todd. The plat made and filed in 1836, pursuant to the act of the legislature in 1833 making the town of Calhoun a part of the town of Springfield, shows no alley in this block nor are any lots designated therein. The boundary lines, only, of the block are shown, and it is designated as Todd Square. Thus it seems that up to this time no one, including those in authority who possibly may have furthered the passage of the special act by the legislature relative to the re-survey of the town of Springfield and the making of a new plat, had considered the block as containing an alley. Todd continued to own the property, and in 1855 he conveyed by metes and bounds description the north 157 feet of block 17 to John Cook. It is true, in this deed Todd referred to the alley in the metes and bounds description as forming the south boundary line of the tract conveyed, but no claim of dedication could attach to Todd's deed on account of his having made reference to the alley, under authority of *City of Carlinville* v. *Castle, supra.* This reference to the alley we think of little consequence, for two years later Todd also conveyed the supposed alley strip by metes and bounds to Cook, the same grantee to whom Todd had sold the north 157 feet of the block. If Cook might have claimed rights in an alley by virtue of his deed from Todd to the north half of the block, such rights were of no importance to Cook upon receiving title to the entire strip. From Cook, by *mesne* conveyances, title to the strip in question passed by metes and bounds description to appellant's father, who owned the south half of the block, and from him, as grantor, to appellant. As we have before stated, Cook, who owned the north 157 feet of the block, conveyed title thereto, except the Gietl tract in the southeast corner, to John Williams, who occupied the property and had a board fence along his south line. There is no

proof that he ever obtained any interest or easement in the alley strip or that he ever used it for any purpose. Neither is there any proof in the record showing the Gietls, or their predecessors in title, ever acquired any rights or easement in the 16-foot strip from Cook. If Williams acquired title to only the north 157 feet of block 17, when his property was set off to his two sons by virtue of the partition suit the subdivision platted by them could have rightfully included only the property which their ancestor owned. However, the subdivision plat showed the full lots as 157.8 feet from north to south and also an adjoining 8-foot alley on the south, making a total of 165.8 feet represented as being owned by them and platted.

Appellees, except the Gietls, owning property in block 17 acquired title by reference to the Williams subdivision plat. The record shows no conveyance at any time of any portion of the north half of block 17, owned by appellees, by reference to lot numbers under the old town plat, but all such conveyances thereto were by metes and bounds descriptions or by reference to the Williams subdivision plat. Appellees contend that appellant's father, from whom she derived title, recognized the old town plat, and that he received deeds and gave mortgages to property located in the south half of block 17 by reference to lot numbers shown upon that plat. The record shows such to be the case, but it is equally true that he was grantee and grantor of the disputed alley strip by metes and bounds description, and in 1915 filed for record in the recorder's office of Sangamon county a plat or subdivision of the entire south half of block 17, showing appellant to be the owner of the strip here in question. We see no pretense of any dedication to be attached to any act of appellant's predecessor in title.

The streets shown upon the plats of 1823 and 1836 have doubtless all been improved by the city of Springfield, but no proof appears as to just when the supervision and control thereof were assumed by the public authorities of the

city, nor as to whether acceptance of such streets was with reference to the old town plat of 1823 or the revised plat of 1836. At whatever time acceptance and supervision of the streets and alleys were perfected by the city or its officers, the acceptance of a part thereof does not imply an acceptance of all streets and alleys. A municipality may accept and assume control over a part of the streets and alleys shown upon a plat, but an acceptance of a part can not be considered an acceptance of all of them. (*Jordan v. City of Chenoa,* 166 Ill. 530.) The undisputed testimony of two witnesses shows First street, which bounds block 17 on the west, was paved some time prior to 1892, and that the curb extended straight along the east side of the street and across the west end of the alleged alley, shutting off access to or from the street. No work or maintenance was shown to have been done thereon by the city at any time. There was no satisfactory proof of general user of this strip by the public as a public alley, and we think the unequivocal proof of an intention to dedicate this strip to the public and its acceptance by the public is lacking in this record.

The master found the house had been located on a portion of the west end of the disputed strip for twenty years prior to the filing of the bill, in 1921, and there is proof showing that dwelling to have been built by appellant's father before 1892. It appears that the south half of block 17 was vacant in 1870 and for a number of years thereafter, with the possible exception of one house near the southeast corner, where appellant's father lived. A marked depression extended from Second street west across the south half of the block, including a part of the strip, and the west part of the half block was used as a public dumping ground for a number of years. Part of the half block was filled up to the extent of fifteen or twenty feet. Prior to 1890 the north 157 feet of the block was occupied by its owner, John Williams, or some of his relatives, and

a board fence extended along the south line of his property. No use is shown to have been made of the strip by Williams or his relatives. There is some evidence in the record showing that vehicles and persons had been seen going through the block prior to 1904, but the nature, extent and purpose of the use are quite vague and indefinite. No use of the strip as a means of access to the property in the north half of the block was shown to have taken place until after 1904, which was less than twenty years prior to the filing of this bill. During that year, and thereafter, portions of the north half of the block were improved with buildings, a part of which have since been destroyed by fire. As stated, during a long period of time, and before the erection of the house here involved, the whole south half of the block was undeveloped and vacant and the west and south portions thereof were used for a dumping ground.

The use of vacant and unoccupied land by the public is presumed to be permissive and not adverse. To establish a highway or public way by prescription it is necessary that the use shall be under a claim of right, adverse, open, notorious, exclusive, continuous and uninterrupted for the statutory period. (*Doss* v. *Bunyan, supra; O'Connell* v. *Chicago Terminal Transfer Railroad Co.* 184 Ill. 308, and cases there cited.) There must be something more than mere travel by the public over unenclosed lands to create a highway by prescription. Use by a few individuals, and not by the public generally, does not constitute such use by the public as creates title by prescription. The user must be under claim of right in the public and not by mere acquiescence on the part of the owner. Express notice of such claim is not necessary, but there must be such conduct on the part of the public authorities as to reasonably inform the owner that the highway is used under a claim of right. (*Town of Brushy Mound* v. *McClintock,* 150 Ill. 129.) The record contains no proof of any act on the part of the municipality or its officials in either accepting, improving

or maintaining the alley in question. It does show that when First street was paved the curb was built straight along that street and no provision was made to permit access to or from the alleged alley. This act indicates the municipal authorities had no intention of assuming control of the strip and their belief that it was not an alley. (*Palmer* v. *City of Chicago,* 248 Ill. 201.) The proof contained in the record is insufficient to establish a public alley by prescription.

Some other points are raised in the briefs, which in view of our conclusion need not be further discussed.

The decree will be reversed and the cause remanded, with directions to dissolve the injunction and dismiss the bill.

*Reversed and remanded, with directions.*